WELLINGTON KENWELL, Appellant, *v.* CLARENCE F. LEE, as Supervisor of the Town of Inlet, et al., Respondents.

(Argued December 13, 1932; decided February 28, 1933.)

*Charles E. Snyder* for appellant. Defendants have no constitutional right to take and appropriate Bug lake on State-owned land in the Forest Preserve, and issue bonds of the town of Inlet to pay for so doing. (*Association* v. *MacDonald*, 253 N. Y. 234; *People* v. *Santa Clara Lumber Co.*, 213 N. Y. 61; *People* v. *Witherbee*, 178 App. Div. 368; *People* v. *Baldwin*, 197 App. Div. 285; *People* v. *Gaylord*, 139 App. Div. 814; *Pashley* v. *Bennett*, 108 App. Div. 102; *Adirondack R. R. Co.* v. *Indian River Co.*, 27 App. Div. 326; 160 N. Y. 225.)

*James C. Tormey* and *Alton C. O'Hara* for respondents. The Inlet water district was legally and properly organized. (*Eastman Kodak* v. *Richards*, 123 Misc. Rep. 83; *O'Donoghue* v. *Boies*, 159 N. Y. 87; *Matter of Doey* v. *Howland Co.*, 224 N. Y. 30; Laws 1926, ch. 470, § 7; *Matter of Syracuse, B. & N. Y. R. R. Co.* v. *Van Amburgh*, 223 App. Div. 485; 251 N. Y. 548.)

CROUCH, J. Inlet is a town in Hamilton county, N. Y. It is entirely within the Forest Preserve of the State. Its area is 40,546 acres, all of which except 1,500 acres at most is wild forest land. About one-half of it is owned by the State. The permanent population, according to the last census, is 257. There is a transient summer population of perhaps 3,000. The center of the population both permanent and transient is the hamlet of Inlet.

In 1930 the town board, purporting to act pursuant to the provisions of the Town Law (Cons. Laws, ch. 62), sections 282 *et seq.*, and of the General District Law (L. 1926, ch. 470), established a water district, the boundaries of which were coterminous with the boundaries

of the town, and appointed a board of water commissioners. The project contemplated Bug lake as a source of water supply and $110,000 as the maximum expense of construction. As Bug lake is on lands owned by the State in the Forest Preserve, its use as a reservoir could be had only upon compliance with the provisions of and subject to the limitations imposed by article VII, section 7, of the State Constitution, and article XIII of the Conservation Law (Cons. Laws, ch. 65). Accordingly, the board of water commissioners of the Inlet water district applied to the State Water Power and Control Commission for the approval of the plans and for consent to use Bug lake as a reservoir with incidental land necessary for the project. After a hearing modified plans were approved and the consent asked for was granted. Thereafter at a meeting of the town board of the town of Inlet, the issuance of bonds aggregating $110,000 for the construction of the water system was authorized, with a provision that there should be levied, assessed and collected annually upon the taxable property of the town a sum sufficient to pay the principal and interest as the same became due and payable. This action was brought by plaintiff as a taxpayer under section 51 of the General Municipal Law (Cons. Laws, ch. 24), to enjoin the issuance of the bonds. The complaint was dismissed by the trial court and the judgment was affirmed by the Appellate Division.

The case is here upon the principal contention that the judgment is in direct violation of article VII, section 7, of the State Constitution, in that the expense of the improvement, instead of being " apportioned on the public and private property and municipalities benefited to the extent of the benefits received," has been made a charge " upon the taxable property of the town," without an apportionment of benefits. The effect of this, it is said, is not only to deprive plaintiff of a constitutional right and adversely to affect his property and injure him, but also to burden the State with a heavy tax on its wild forest

lands — one-half of the town's entire area — which are doubtfully, if at all, benefited. The view which we take of the matter renders it unnecessary to discuss either that contention or the many other alleged errors and defects, both of form and substance, which are pressed to our attention.

We are disposed to doubt the legality of creating a water district which covers the entire area of a town. Section 282 of the Town Law relates only to the establishment of " a water district outside of an incorporated city or village and wholly within such town." Article 13 of the Town Law will be searched in vain for any authority in a town as such to construct a water works system. Considering the wide range of legislation on the general subject of water supply for the various communities of the State, the omission of such authority may not be deemed inadvertent. What may not be done directly may not ordinarily be done by indirection. The desirability for financial reasons of including the State's wild forest lands in the project here, is not an adequate ground for varying the general rule.

The fundamental difficulty with the entire proceeding lies in the fact that the town which *is* a municipality is not authorized to establish a water supply system; and that the water supply district, even assuming that it has been legally created, is not a municipality within the meaning of article VII, section 7, of the Constitution. It is there provided that: " The lands of the State, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. * * * The Legislature may by general laws provide for the use of not exceeding three percentum of such lands for the construction and maintenance of reservoirs for *municipal* water supply, for the canals of the State and to regulate the flow of streams."

The first sentence sounds the original and dominant note of the State's policy with reference to the Forest

Preserve. The subsequent amendments but serve to accentuate it. In view of that policy the courts have adhered to a strict and literal construction of the entire section. (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225; *Assn. Protection Adirondacks* v. *MacDonald*, 253 N. Y. 234.) We think the words " municipal water supply " mean " supply of water to a municipality," and not to a water district.

" A ' municipal corporation ' includes a county, town, school district, village and city and any other territorial division of the state established by law with powers of local government." (General Corp. Law; Cons. Laws, ch. 23, § 3, subd. 1.) While a water district, for the special objects of certain statutes, has been included as a matter of convenient reference within the terms " municipal corporation," or " municipality " (*e. g.*, Gen. Mun. Law, § 29; L. 1927, ch. 654, § 2), it is essentially and only " a special administrative area." (*Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318; *People ex rel. Farley* v. *Winkler*, 203 N. Y. 445; *People ex rel. Hon Yost* v. *Becker*, 203 N. Y. 201; *People ex rel. Desiderio* v. *Conolly*, 238 N. Y. 326, 331, 332.)

So far as section 540 of the Conservation Law purports to authorize a water district to make application for the construction and maintenance of a water supply reservoir on lands owned by the State in the Forest Preserve, it is without warrant in the Constitution. The Water Power and Control Commission, therefore, had no jurisdiction to entertain the application and to grant approval and consent.

The judgments should be reversed and judgment in favor of the plaintiff granted, with costs in all courts.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.