Piper, J.
In these proceedings we are called upon to review, pursuant to section 454 of the Conservation Law and article 78 of the Civil Practice Act, the determination of the respondents to construct a dam and operate a reservoir on the south branch of the Moose River near Panther Mountain in Herkimer County for the purpose of regulating the Moose and Black Rivers. The site of the proposed dam is on lands of the State which constitute a part of the Forest preserve. The proposed reservoir, if constructed, will flood upwards of 900 acres of State land and upwards of 3,100 acres of land now owned by the petitioner, Adirondack League Club, and for the purpose of construction and maintenance, additional land of the State and the club will be required. Altogether it is estimated that the project will require the taking of approximately 3,500 acres of the lands of the club and the use of 1,500 acres of State forest preserve land.
The petitioners contend that:
1. The provisions of article VII of the Conservation Law which authorizes the board of a river regulating district to construct dams and reservoirs on State forest preserve lands is unconstitutional in that article XIV of "the Constitution of the State of New York requires that “ Such reservoirs shall be constructed, owned and controlled by the state * * * that “ Any such- reservoir shall always be operated by the state * * * ”; and that the board of the district is not “ the state.”
2. That the petitioner, Adirondack League Club, will, if the reservoir is constructed, be deprived of property without due process of law.
3. That respondents have failed to comply with certain provisions of article VII of the Conservation Law.
4. That the capacity of the proposed reservoir is excessive.
5. That the construction of the dam and reservoir is not in the public interest.
*621 As to the last two contentions, we think the record contains sufficient proof from which the respondents could make the findings they have made and although we might, on all the evidence, differ with their findings, we may not say that these findings were not based upon substantial evidence. (Matter of Miller v. Kling, 291 N. Y. 65; Matter of Humphrey v. State Ins. Fund, 298 N. Y. 327.)
As to the objection that the Adirondack League Club will be deprived of property without due process of law, we think that question was settled in the Sacandaga Reservoir case (Hudson Riv. Regulating Dist. v. Fonda, J. & G. R. R. Co., 249 N. Y. 445).
We have also reached the conclusion that there has been a substantial compliance with the applicable provisions of article VII of the Conservation Law and that all the steps have been taken which are required at this stage of the proceedings. Before actual construction of the reservoir is commenced, additional surveys, and contract plans will have to be made, but such work was not necessary until the determination of respondents was reviewed by this court.
The final question to be determined is whether or not respondents may construct and operate the proposed reservoir on lands of the State within the forest preserve. Prior to 1894, the Legislature had the sole authority to determine what should be done with forest preserve lands owned by the State. In that year, the Constitution was amended by adding a new section 7 to article VII, which was as follows: “ The lands of the state now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed.”
Although several amendments to the section were proposed, • none were adopted until 1913, when the section was amended by adding the following language: “ But the legislature may by general laws provide for the use of not exceeding three per centum of such lands for the construction and maintenance of reservoirs for municipal water supply, for the canals of the state and to regulate the flow of streams. Such reservoirs shall be constructed, owned and controlled by the state, but such work shall not be undertaken until after the boundaries and high flow lines thereof shall have been accurately surveyed and fixed, and after public notice, hearing and determination that such lands are required for such public use. The expenses of any *622 such improvements shall be apportioned on the public and private property and municipalities benefited to the extent of the benefits received. Any such reservoir shall always be operated by the state and the legislature shall provide for a charge upon the property and municipalities benefited for a reasonable return to the state upon the value of the rights and property of the state used and the services of the state rendered, which shall be fixed for terms of not exceeding ten years and be readjustable at the end of any term. Unsanitary conditions shall not be created or continued by any such public works. A violation of any of the provisions of this section may be restrained at the suit of the people or, with the consent of the supreme court in appellate division, on notice to the attorney-general at the suit of any citizen.”
In 1927 and in 1933, further amendments were adopted permitting the construction of certain highways through the forest preserve but not otherwise changing the section.
The 1938 Constitutional Convention placed the subject matter contained in former sections 7'and 7-a (the latter section permitting the construction of a highway from Indian Lake to Speculator) of article VII in article XIV and divided it into four sections.
Section 1 is in the language of the 1894 amendment except that a new sentence was added permitting the construction and maintenance of “ any highway heretofore specifically authorized by constitutional amendment.”
Section 2 is in the language of the 1913 amendment except for the last sentence which has been transferred to section 4. Section 3 has to do with wild life conservation and reforestation and has no application to reservoirs.
Later amendments approved in 1941 and 1947, permit other uses of forest preserve land and have no relation to reservoirs.
Shortly after the 1913 amendment permitting the construction ■ of reservoirs “ to regulate the flow of streams ”, article VTI-A was added to the Conservation Law by chapter 662 of the Laws of 1915. That article is now article VII. It provides in section 431 as last amended by section 209 of chapter 710 of the Laws of 1943 as follows:
“ § 431. River regulating districts to be public corporations.
“ Bodies corporate, which shall consist of and be known as river regulating districts, may be created as in this article provided, to construct, maintain and operate reservoirs within such districts, subject to the provisions of this act, for the purpose *623 of regulating the flow of streams, when required by the public welfare, including public health and safety. Such river regulating districts are declared to be public corporations and shall have perpetual existence and the power to acquire and hold such real estate and other property as may be necessary, to sue and be sued, to incur contract liabilities, to exercise the right of eminent domain and of assessment and taxation and to do all acts and exercise all powers authorized by and subject to the provisions of this article. Such powers shall be exercised by and in the name of the board of the district.”
The article provides for the creation of such districts by presentation of a petition to the State Water Power and Control Commission after public hearing and “ notice by publication * * * of the time and place ’ ’ has been given. If the commission shall determine that such a district should be created, it is required to make an order creating the district, and also prepare and file a map of the district with the Secretary of State and with the county clerk of each county wholly or partly within the district and give notice by publication of its action. The action of the commission becomes final forty days thereafter unless proceedings are commenced to review the determination. Section 436 provides that the Governor shall appoint three persons who shall constitute the board of the district. Section 438 requires each person so appointed to take the constitutional oath of office and file same in the office of the Secretary of State. The board then organizes by electing one of its members as president and appointing a secretary. Section 442 provides that the Governor may remove any member of the board for inefficiency, neglect of duty or misconduct in office after a hearing.
The board may prepare a general plan for the regulation of the flow of the river or rivers in the district and among other things, must show the lands to be flooded by the proposed reservoirs and ‘ ‘ how many acres, if any, of such land or lands of the state within the forest preserve ’ ’. Upon completion of the plan the board must certify it to the commission for its approval and the commission may approve, or modify and approve as modified. The plan may be altered from time to time under like procedure.
Section 446 provides in part as follows :
“ Not exceed three per centum of the lands of the state, now owned or hereafter acquired, constituting the forest preserve * * * may be used for the construction and maintenance of reservoirs for the purpose of this article. * * *
*624 “ Title to all real estate acquired pursuant to the provisions of this article excepting as in this article otherwise expressly provided, shall be taken in the name of the state of New York, # * # J J
Section 452 provides that if the board determines to construct a reservoir, it must prepare prehminary plans with estimates of the cost together with a survey of the lands upon which it is to be constructed, the location thereof and of all lands to be taken, flowed or damaged, with a description by survey or otherwise, showing the amount of lands belonging to the State and to persons or public corporations and the forest preserve lands affected thereby. Such preliminary plans must then be certified to the commission. The commission must then hold a hearing and approve or modify and approve.
Section 473 authorizes the commission to take testimony or appoint a commissioner who may take testimony and hear proofs and report his opinion to the commission who may make its determination from the proofs and testimony or from other data.
Section 453 requires that the board after the approval of the plans by the commission shall hold a hearing after notice by publication “ to persons and public corporations interested therein ’ ’. If the board shall determine, after such hearing, that the proposed reservoir shall be constructed, it must make a final order accordingly and file certified copies in the office of the county clerk of each county in which any lands within the district are located also in the office of the Attorney-General and the commission and give notice by publication of the making and filing of such final order.
Section 454 provides for review by certiorari by “ Any person or public corporation affected by the final determination of the board ’ ’, upon notice to the Attorney-General, or the Attorney-General may cause same to be reviewed.
The Black Biver Begulating District was organized in September, 1919. The board of the district, the respondents, now operate the Stillwater Beservoir on the Beaver Biver, Old Forge Beservoir on the Middle Branch of the Moose, Sixth Lake Beservoir, also on the Middle Branch of the Moose, both Moose and Beaver Bivers being tributaries of the Black. The Stillwater Beservoir is partly or entirely in the forest preserve and was completed in 1925. The other two reservoirs were originally built by the State about 1882, and were turned over to the district by order of the Conservation Commission July 1, 1920.
*625 In Gaynor v. Marohn (268 N. Y. 417, 425) the court held that “ the State may create an agency for the purpose of carrying out a State duty or function, provided of course that it does not infringe on other provisions of the Constitution, such as the delegation of constitutional authority vested in others.”
Section 3 of article V of the Constitution provides in part as follows: “ Subject to the limitations contained in this constitution, the legislature may from time to time assign by law new powers and functions to departments, officers, boards or commissions, and increase, modify or diminish their powers and functions.”
Shortly after the amendment of 1913 became effective the Legislature enacted chapter 662 of the Laws of 1915, the predecessor of article VII of the Conservation Law. It clearly appears from a reading of the statute that the Legislature had the constitutional limitations in mind.
The districts were to be created by a commission of the State composed of “ the conservation commissioner, or a deputy designated by him, the attorney-general, or a deputy designated by him, and the state engineer, or a deputy designated by him.” (§ 430, subd. 5.) (By amendment to the statute, the commission is the Water Power and Control Commission, composed of the Conservation Commissioner, the Attorney-General, and the Superintendent of Public Works.) After appointment by the Governor, each member of the board is required to take and file the constitutional oath of office in the Secretary of State’s office. Title to all real estate acquired by the board is in the name of the State. The Comptroller is given control of the funds of the district under various provisions of the statute, and the acts of the board must have the approval of the commission.
Section 10 of the Public Officers Law provides: “ The oath of office of every state officer shall be filed in the office of the secretary of state; of every officer of a municipal corporation, with the clerk thereof; and of every other officer, in the office of the clerk of the county in which he shall reside * * *."
In the requirement that the members of the board file their oaths of office in the office of the Secretary of State is shown the intent of the Legislature to make them State officers. It is clear that the legislative intent was to give the commission the power, in proper cases, to create State agencies to take over State functions, to regulate rivers under the supervision of the commission, and although the statute names such agencies public corporations, the board members were to be and are State officers.
*626 “ The court always approaches the decision of a constitutional question with a feeling of grave responsibility. * * * Nevertheless, a solemn duty rests upon the court to uphold the fundamental law of the land, and to set aside any statute which clearly transcends the provisions of the Constitution.
“ To justify the court, however, in declaring a statute invalid, the conflict between the act and the Constitution must be clear and certain. Every presumption favors the validity of the statute. If there is a reasonable doubt, the act should be upheld.” (Gardner v. Ginther, 232 App. Div. 296, 298, affd. 257 N. Y. 578.)
We find nothing in Kenwell v. Lee (261 N. Y. 113); Pantess v. Saratoga Springs Authority (255 App. Div. 426); Association for the Protection of the Adirondacks v. MacDonald (253 N. Y. 234), or any of the other cases cited by petitioners which is in point on the constitutional question we are called upon to decide.
We think that the Legislature acted within constitutional limitations in enacting the statute; that the respondent district is a State agency; that the members of the board of the district are State officers and that their acts are the acts of “ the state ”, and comply with the statute.
The determination of the board of the Black River Regulating District should be confirmed, with $50 costs and disbursements.
In each proceeding: All concur. Present — Taylor, P. J., McCurn, Love, Vaughan and Piper JJ.
In each proceeding: Determination confirmed, with $50 costs and disbursements.