Requestor: Honorable Thomas C. Jorling, Commissioner State of New York Department of Environmental Conservation Albany, New York 12233
Written by: Robert Abrams, Attorney General
Your counsel has requested our opinion as to whether the Department of Environmental Conservation may issue a temporary revocable permit to allow the Town of Arietta to trim or remove 131 trees in the Adirondack Forest Preserve in the vicinity of the Piseco Airport in order to provide for a safe clear landing zone in accordance with Federal Aviation Agency (FAA) standards.
Counsel's letter notes that the Piseco Airport was created in 1929 with a 1,500-foot long grass landing strip. In 1965 the New York Constitution was amended to authorize the State to convey 28 acres of Forest Preserve land to the Town of Arietta for purposes of extending the runway. The town then cleared that parcel and extended the runway to 3,000 feet.
Counsel's letter indicates that since the 1965 amendment, the trees in a part of the Forest Preserve adjacent to the Piseco Airport have continued to grow. The now encroach into the airspace surrounding the runway which constitutes its "clear zone" as defined by FAA regulations. Counsel's question is whether the removal and/or cutting of these trees is authorized by the 1965 amendment to the New York Constitution.
Any discussion of the authority to fell trees in the Adirondack Forest Preserve must begin with an analysis of Article XIV, § 1 of the New York Constitution, which contains a blanket prohibition against such cuttings:
 "The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed" (NY Const, Art XIV, § 1).
The Forest Preserve has been protected by this unique and stringent constitutional safeguard for nearly 100 years. In Association for theProtection of the Adirondacks v MacDonald, 253 N.Y. 234 (1930), the Court of Appeals discussed the background and meaning of the "forever wild" provision of the State Constitution. The provision originated in the Constitution of 1894 and its purpose is to prevent the cutting, destruction or sale of timber in the Forest Preserve as had previously been permitted by legislation (id., p 238). This purpose was accomplished through a constitutional provision closing all gaps and openings in the law by prohibiting the cutting or removal of timber from the Forest Preserve (ibid.). The court discussed the limited cutting that would be permitted under the "forever wild" provision:
 "The Adirondack Park was to be preserved, not destroyed. Therefore, all things necessary were permitted, such as measures to prevent forest fires, the repairs to roads and proper inspection, or the erection and maintenance of proper facilities for the use by the public which did not call for the removal of the timber to any material degree. The Forest Preserve is preserved for the public; its benefits are for the people of the State as a whole. Whatever the advantages may be of having wild forest lands preserved in their natural state, the advantages are for every one [sic] within the State and for the use of the people of the State. Unless prohibited by the constitutional provision, this use and preservation are subject to the reasonable regulations of the Legislature.
 "What may be done in these forest lands to preserve them or to open them up for the use of the public, or what reasonable cutting or removal of timber may be necessitated in order to properly preserve the State Park, we are not at this time called upon to determine. What regulations may reasonably be made by the Commission for the use of the park by campers and those who seek recreation and health in the quiet and solitude of the north woods is not before us in this case. The Forest Preserve and the Adirondack Park within it are for the reasonable use and benefit of the public, as heretofore stated. A very considerable use may be made by campers and others without in any way interfering with this purpose of preserving them as wild forest lands" (id., pp 238-241).
Thus, reasonable measures may be taken in order to safeguard the Forest Preserve and make it available for recreational uses. The "forever wild" provision, however, prohibits the cutting down of trees to any substantial extent for any purpose (id., p 242).
Any development in the Preserve which is not consistent with Article XIV must be specifically authorized by constitutional amendment. Over the years, amendments have been added to allow for the construction and maintenance of particular highways, ski trails and landfills. The 1965 amendment which conveyed Forest Preserve land to the Town of Arietta for expansion of the Piseco Airport reads as follows:
 "Notwithstanding the foregoing provisions, the state may convey to the town of Arietta twenty-eight acres of forest preserve land within such town for public use in providing for the extension of the runway and landing strip of the Piseco airport and in exchange therefore the town of Arietta shall convey to the state thirty acres of certain land owned by such town in the town of Arietta" (NY Const, Art XIV, § 1).
For the reasons that follow, we conclude that this amendment does not authorize the cutting of trees beyond the 28 acres which were conveyed.
Initially, we note that the amendment is silent on the question of cutting timber outside the acreage conveyed to the Town of Arietta. Authority to fell trees on the parcel conveyed to the town is implicit: once so conveyed by constitutional authorization, the parcel was no longer part of the Forest Preserve, and no longer subject to the prohibition contained in Article XIV, § 1.
We do not believe that cutting within the Forest Preserve is implied by the 1965 amendment. The history of the amendment is enlightening as to the purposes to be served by the transfer to the Town of Arietta by the State of the 28 acres of Forest Preserve land. In a February 20, 1963 letter from Hamilton Chequer, representing the engineering consultant employed by the town for the airport project, to William D. Mulholland, Assistant Commissioner for Lands and Forests, New York State Conservation Department, Mr. Chequer indicated that the town had requested a grant from the FAA to improve the Piseco Airport. He states that the town had purchased the property on which the airport was located, consisting of about sixty acres, a few years earlier. Prior to that time, it had been used as a landing field for light airplanes for 30 years or more with little or no improvements. Following the request to the FAA for funding, the town was informed by the FAA that certain specifications had to be met with respect to the airport, including the provision of a "clear zone". The letter further stated:
 "The specifications for the `clear zone' calls for a certain area of specified dimensions to be clear and to be kept clear of obstructions. A certain part of this area, I will again refer to the print, is old fields with little or no forest acreage for a distance of about 500 from the end of the landing strip and, for the thirty-five years that I have been familiar with the area, nothing has shown any growth, however, the FAA feel [sic] that the Town should have the privilege of keeping or preventing any growth in the future. Beyond this is forested area which would need clearing, or at least thinning. Clearing would allow a lengthening of the runway of 400 to 500 feet. This additional length would be desirable but not necessary to comply with the specifications for this type of an airfield."
Through letter dated March 18, 1963 from Mr. Mulholland to Mr. Chequer, Mr. Mulholland stated that he had reviewed the matter and concluded that in view of the constitutional restriction applicable to the Forest Preserve land in question, the State could not permit the proposed use of the Forest Preserve land.
A February 5, 1964 letter from Mr. Chequer to Mr. Mulholland transmitted a brochure prepared to acquaint State legislators with a bill introduced in the Assembly by Assemblyman Younglove providing for the transfer of Forest Preserve land to the Town of Arietta in relation to the airport. That brochure states that the town needed the Forest Preserve land.
 "in order to comply with FAA Regulations in regards to `clear zones' and the approach and departure of airplanes . . .
 "It has also been recommended by the FAA and the NYS Bureau of Aviation that an attempt to acquire lands from the State of New York be made so that an extension in length of the landing strip can be planned for future development".
The brochure goes on to describe the 28 acres needed for these purposes. The brochure further explains that the "clear zone" was needed to provide for safety in the approach and departure of airplanes and that the runway extension was to accommodate the expected growth in the use of the airport. "The land, as stated above, needed for the `clear zone' and for future improvements is State Forest Preserve Lands. For this reason, the Town Board of the Town of Arietta request [sic] this amendment".
These documents clearly establish that the purpose of the amendment to the Constitution transferring the 28 acres of Forest Preserve land was to permit the establishment of a clear zone and extension of the runway. They also indicate that the proponents of the constitutional amendment intended that the conveyance, subsequent clearing and continued maintenance of the conveyed land would bring and continue the airport in full compliance with FAA standards.
The constitutional prohibition against cutting in the Preserve is unequivocal and absolute. Indeed, in the past the only conditions under which cuttings have been allowed are if they were authorized by a specific constitutional amendment, or if they constituted reasonable measures to safeguard the preserve or make it available for recreational uses, provided that cutting would not occur to any material degree (1986 Op Atty Gen 15).
In the past the amendments to the Constitution allowing development in the Forest Preserve have been strictly construed. For example, a 1933 Attorney General's opinion concluded that a separate constitutional amendment was required to remove trees in order to improve — by means of removing hazardous curves — an already existing highway (1933 Op Atty Gen 395; see also, 1954 Op Atty Gen 157). Amendments to the Constitution establishing exemptions from the "forever wild" clause have been specific as to purpose, permitted activities and acreage. Through the years Article XIV, section 1 of the Constitution has been amended to establish certain exemptions from the "forever wild" clause to permit:
 the construction and maintenance of "interstate highway route five hundred two . . . not to exceed a total of three hundred acres of state forest preserve land";
 the construction and maintenance of "not more than twenty miles of ski trails thirty to eighty feet wide" on Whiteface Mountain;
 the construction of "not more than twenty miles of ski trails thirty to eighty feet wide, together with appurtenances thereto, on the slopes of Belleyre Mountain . . . [and of] not more than thirty miles of ski trails thirty to eighty feet wide . . . on the slopes of Gore, South and Pete Gay mountains";
 the relocation, reconstruction and maintenance of "a total of not more than fifty miles of existing state highways for the purpose of eliminating the hazards of dangerous curves and grades, provided a total of no more than four hundred acres of forest preserve land shall be used for such purpose and that no single relocated portion of any highway shall exceed one mile in length";
 the conveyance "to the village of Saranac Lake [of] ten acres of forest preserve land . . . for public use in providing for refuse disposal".
Through these amendments to the constitution, the State has been authorized to designate specific acreages of land in the Forest Preserve for certain purposes. Each of these provisions specifically defines the permitted acreage for each use.
Consistent with these provisions, the amendment pertaining to the Piseco Airport specifically authorized the conveyance by the State to the Town of Arietta of 28 acres of land in the Forest Preserve for the extension of the runway. Once conveyed, the town was constitutionally authorized to use the 28 acres for the extension of the runway and establishment of a clear zone. The use of this acreage for the runway extension, therefore, is not subject to the "forever wild" restrictions, and may continue to be maintained by the town for that purpose. There is nothing, however, express or implied in the constitutional language, that provides authority for the cutting of trees in the Forest Preserve outside the 28 acre area conveyed by the State to the Town of Arietta for any purpose, including the establishment of a clear zone. By express and unequivocal language, only the 28 acres are exempted from the "forever wild" restrictions.
It is significant that the other above-cited amendments specifically authorize maintenance of the ski trails and highways by the State. Presumably, this is necessitated by the stringent language of the "forever wild" provision, prohibiting the sale, removal or destruction of timber. In the face of this provision, the drafters of these amendments deemed it necessary to specifically provide for future maintenance.
Authority for the Town of Arietta to cut trees outside the 28 acres cannot fairly be implied from the language of the constitutional provision. Nor would such a construction be consistent with the constitutional scheme of Article XIV, creating broad restrictions with narrowly drawn exemptions. The courts have adhered to a strict and literal construction of the provisions of the Constitution dealing with the Forest Preserve (Kenwell v Lee, 261 N.Y. 113, 116-117 [1933]).
We recognize that this construction of the constitutional language will limit the use of the Piseco Airport. The drafters of the provision, however, could have included language to permit the cutting of trees on adjacent Forest Preserve land to maintain a "clear zone" for aircraft. They did not do so, and it appears from the above-stated history of the amendment that no such language was deemed necessary at the time of the amendment.
Finally, we note that in the past we have found that reasonable measures may be taken in order to safeguard the Forest Preserve and make it available for recreational uses (1986 Op Atty Gen 15, 17-18). The cutting of trees to any substantial extent for any purpose, however, is prohibited (ibid.). For example, cutting of trees to assist in trail maintenance and to prevent soil compaction is permissible (ibid.), as is cutting of trees to assist in fire prevention (1950 Op Atty Gen 154; 1934 Op Atty Gen 309; 1933 Op Atty Gen 369), or to create scenic vistas (1935 Op Atty Gen 274). In these instances, immaterial removal of trees was allowed to permit reasonable measures solely to safeguard the Forest Preserve or make it available for recreational uses. The cuttings proposed in the immediate case do not fall within the narrow exceptions set forth in these opinions. The limits of the Piseco Airport runway extension project were clearly set forth by the 1965 amendment to the Constitution. The amendment, neither by its terms nor history, provides any authority to cut trees on adjacent Forest Preserve land. Indeed, the history of the amendment suggests that the 28 acres was viewed at the time as sufficient for present and future airport operations.*
It follows, in view of the language and history of the constitutional amendment with respect to the Piseco Airport, that DEC may not issue a temporary revocable permit to the Town of Arietta to trim or remove 131 trees in the Forest Preserve. In any event, we note that permits issued by DEC for the temporary use of the Forest Preserve (see Environmental Conservation Law, § 9-0105[15]), have been allowed only under very narrow circumstances (1955 Op Atty Gen 185; 1949 Op Atty Gen 125; 1947 Op Atty Gen 174). These temporary permits may not allow the cutting, removal or destruction of any timber or the impairment of the wild forest character of the land (ibid.).
We conclude that the Department of Environmental Conservation is without authority to issue a temporary revocable permit to allow the Town of Arietta to trim or remove 131 trees in the Forest Preserve.
* In any event, your staff has indicated that a reduction in runway length from 3,000 to 2,000 feet would have no effect on fire surveillance, fire suppression, Medivac operations and civil air patrol operations in the region.
Fire surveillance is provided to the State by contract through use of seaplanes. Bodies of water are used for takeoff and landing.
Fire suppression is carried out primarily by helicopters. In the event of a major conflagration, the State might contract for use of heavy air tankers for firefighting purposes. Piseco Airport, with its full 3,000 foot runway, is too small for use by these planes.
Medivac operations, which remove injured people from the Adirondacks, are accomplished primarily through use of State Police helicopters with Department of Environmental Conservation helicopters as backup.
Civil air patrol operations to locate downed aircraft in the region are carried out through use of small, single engine airplanes which will be able to use a runway shortened to 2,000 feet at Piseco.
Thus, cutting of the trees would not benefit the Forest Preserve.