BLACK RIVER REGULATING DISTRICT et al., Plaintiffs, *v.* ADIRONDACK LEAGUE CLUB, Defendant.

Supreme Court, Special Term, Oneida County, March 24, 1952.

*Charles H. Tuttle, Warnick J. Kernan, John R. Brook* and *Sanford D. Stockton, Jr.,* for defendant.

*Kenneth W. Brett, Corporation Counsel,* for City of Watertown.

*Lawrence R. Ormiston* for Madeleine Bagley.

*Daniel Scanlon* and *Russell Wright* for plaintiffs.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Edward L. Ryan* of counsel), appearing under section 71 of the Executive Law.

*M. Francis Malone* for Oneida County Forest Preserve, Inc., *amicus curiæ.*

*Milo Kniffen* for Adirondack Moose River Committee, Inc., and others, *amici curiæ.*

BASTOW, J. The primary motion made by the defendant asks for judgment for the defendant on the pleadings pursuant to rule 112 of the Rules of Civil Practice or, in the alternative for an order pursuant to rule 113 dismissing the complaint and for summary judgment. This motion was returnable and was partially argued on August 13, 1951. It appearing that the constitutionality of a statute was brought into question an order was made pursuant to section 71 of the Executive Law directing the service of notice upon the Attorney-General, who appeared at the adjourned hearing on August 28, 1951, for the limited purpose of supporting the constitutionality of the statute under consideration. A further hearing was held on September 11, 1951.

The decision on the primary motion was held in abeyance pending the filing of briefs by various counsel. During that interlude three additional motions were brought on before the court at Watertown, New York, on December 10, 1951. The first

of these motions was made by the defendant for judgment dismissing this action on the ground that the court had no jurisdiction of the subject matter in that the State of New York, a necessary and indispensable party, had not been made a party to the action. The other two motions were made by the City of Watertown and one Madeleine Bagley for permission to intervene as parties plaintiffs. The submission of briefs was completed on February 4, 1952.

The plaintiff, Black River Regulating District, was created in 1919 as a public corporation pursuant to then article VII-A (now art. VII) of the Conservation Law. This action has been instituted by the plaintiffs for a judgment determining and declaring:

1. That the Board of Black River Regulating District is entitled to maintain condemnation proceedings against Adirondack League Club to acquire lands owned by it and necessary for construction of Panther Mountain Reservoir.

2. That chapter 803 of the Laws of 1950 is invalid and unconstitutional so far as it may seem to restrict or prevent the Board of Black River Regulating District from proceeding with and completing the work of construction of Panther Mountain Reservoir.

On the same date this action was commenced the district started a proceeding against the defendant herein to condemn pursuant to the provisions of article VII of the Conservation Law some 3,428 acres of land in the county of Herkimer owned by the defendant. It is alleged in the petition that this property is a part of the land along and adjacent to the south branch of the Moose River, a tributary of the Black River, which lands will be submerged by the construction of the Panther Mountain Reservoir.

The laws developing the forest preserve and the Adirondack Park, up to the Constitution of 1894, are reviewed in *People* v. *Adirondack Ry. Co.* (160 N. Y. 225, affd. 176 U. S. 335). At the time of the assembling of the Constitutional Convention of 1894, the law of the State authorized the sale, lease, clearing and cultivation of lands in the forest preserve, the sale of standing or fallen timber thereon, and permitted the laying out of paths and roads through the property. (See L. 1885, ch. 283; L. 1887, ch. 475; L. 1892, ch. 707 and L. 1893, ch. 332.) With these laws before them and the statements in the debates the provision was placed in then section 7 of article VII that " The lands of the State, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest

lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed." (See *Association for Protection of Adirondacks* v. *MacDonald,* 253 N. Y. 234, 239.)

In 1913 an amendment to this provision of the Constitution was approved by the people. It read as follows: " But the Legislature may by general laws provide for the use of not exceeding three per centum of such lands for the construction and maintenance of reservoirs for municipal water supply, for the canals of the State and to regulate the flow of streams. Such reservoirs shall be constructed, owned and controlled by the State, but such work shall not be undertaken until after the boundaries and high flow lines thereof shall have been accurately surveyed and fixed, and after public notice, hearing and determination that such lands are required for such public use. The expense of any such improvements shall be apportioned on the public and private property and municipalities benefited to the extent of the benefits received. Any such reservoir shall always be operated by the State and the Legislature shall provide for a charge upon the property and municipalities benefited for a reasonable return to the State upon the value of the rights and property of the State used and the services of the State rendered, which shall be fixed for terms of not exceeding ten years and be readjustable at the end of any term. Unsanitary conditions shall not be created or continued by any such public works. A violation of any of the provisions of this section may be restrained at the suit of the people or, with the consent of the Supreme Court in Appellate Division, on notice to the Attorney-General at the suit of any citizen."

This section was further amended by action of the Legislature and approval of the people in 1918 and 1927. These amendments had to do with construction of highways. The Constitutional Convention of 1938 placed these provisions in sections 1 and 2 of article XIV where they are now found. At the same time present section 3 of article XIV was enacted. Portions thereof were previously found in section 16 of article VII. The first sentence of section 3 reading " Wild life conservation and reforestation are hereby declared to be policies of the state " was inserted in relation to the provision therein contained authorizing the State to acquire lands outside of the Adirondack Park. (See Revised Record, New York State Constitutional Convention, 1938, Vol. II, pp. 1309, 1310.)

Following the 1913 amendment, the Legislature by chapter 662 of the Laws of 1915, enacted article VII-A of the Conservation Law entitled " River Regulation by Storage Reservoirs ". This enactment is now found in article VII of the Conservation Law. Part II thereof provides for the creation of river regulating districts. Section 431 provides that bodies corporate may be created " to construct, maintain and operate reservoirs within such districts, subject to the provisions of this act, for the purpose of regulating the flow of streams, when required by the public welfare, including public health and safety. Such river regulating districts are declared to be public corporations and shall have perpetual existence and the power to acquire and hold such real estate and other property as may be necessary, to sue and be sued, to incur contract liabilities, to exercise the right of eminent domain and of assessment and taxation and to do all acts and exercise all powers authorized by and subject to the provision of this article. Such powers shall be exercised by and in the name of the board of the district." Any person or public corporation may present to the commission (in 1919 this commission consisted of the Conservation Commissioner, Attorney-General and State Engineer — now the Water Power and Control Commission) a petition for the organization of such a district (§ 432). Procedure is provided for a hearing thereon and upon making a final favorable determination the commission is to prepare and file a map of such district with a certificate of its determination to create such district (§§ 434, 435). Within thirty days after the incorporation of the district the Governor appoints three persons to be known as the board of the district. The Governor fills all vacancies and may remove for cause any member of the board (§§ 436, 442). Each member of the board takes the constitutional oath of office to be filed in the office of the Secretary of State (§ 438). Section 443 provides in part that " Upon its organization the board may prepare a plan for the regulation of the flow of the river or rivers in its district ". When and if approved by the commission it is known as the " official plan ". The board on behalf of the district " subject to the limitations herein contained, have the right to condemn for the use of the district any real estate which is determined to be necessary for the purpose of carrying out any of the provisions of this article. * * * Lands of the state outside of the forest preserve, not used by canals of the state, may be used for the purposes of this article. Not exceeding three per centum of the lands of the state, now owned or hereafter acquired, constituting the forest preserve

as now fixed by law, may be used for the construction and maintenance of reservoirs for the purposes of this article." The title to all real estate is taken in the name of the State of New York and is dedicated to the use and purpose for which it was so taken (§ 446).

Part V of the article is entitled " Construction of Reservoirs ". Section 452 thereof provides that if the board shall determine as part of the official plan that the public interest and welfare require that a reservoir should be constructed for the regulation of the flow of a river it shall cause preliminary plans to be prepared with estimates of the total cost thereof together with a survey of lands to be taken belonging to the State and to persons or public corporations and the amount of lands of the State in the forest preserve affected thereby. When the board has completed such preliminary plans, maps, specifications, estimates and statements, it shall certify the same with its approval thereof to the commission which shall have power after hearing the board to modify them within forty days and certify them as approved by it to the board. Thereupon they are filed in the county clerk's office of each county having lands within the district. Section 453 provides for a hearing by the board. Any interested person or public corporation may appear and make objections to the plan. The board may modify the plans and " If said board shall finally determine that the proposed reservoir shall be made, it shall thereupon make a final order directing the same to be made " and shall cause the same to be filed as therein specified (§ 453). The determination may be reviewed by certiorari by any person or public corporation affected by the final determination and the court may by order modify the final order, maps, plans, specifications, statements and estimates (§ 454). It is provided in section 457 that " When any such final order shall have been made   *   *   *   the board shall proceed as herein provided to the acquisition of such real estate as may be necessary for the construction, maintenance and operation of such reservoir."

Part VI provides for apportionment of cost of the constructed reservoir among the public corporations and parcels of land benefited. (§ 460.) Such cost is levied and assessed against the owners of the real estate benefited by the suitable municipal authorities and collected in the same manner as general taxes (§ 461). After the cost of the improvement has been apportioned and assessed the board may finance the cost of the improvement pursuant to the local finance law but any bonds issued for such purposes shall not be construed in any event as

bonds or indebtedness of the State and the latter shall not be obligated to pay the principal or interest therefor. (§ 464.)

The complaint alleges in substance that the plaintiff district, a public corporation, was created in May, 1919, and thereafter the board prepared a general plan for the regulation of flow of the Black River and its tributaries. The plan was approved in April, 1920, and then became the official plan of the district. This plan, among other things, contemplated the construction of the Stillwater Reservoir on Beaver River and the Panther Mountain Reservoir on Moose River. The former was constructed prior to 1925 at a cost of $1,210,000. Prior to April 20, 1950, the board had so far proceeded with the construction of Panther Mountain Reservoir as to have completed all necessary preliminary studies, plans, hearings and preliminaries as required by law and as to entitle it to complete such work. It had outstanding certificates of indebtedness in excess of $200,000 which represent debts incurred for such preliminary work. The determination and final order of the board to construct the reservoir was made after the required public hearing and filed on November 23, 1948. Thereafter the defendant in this action instituted a proceeding to review such final order and in September, 1949, the Appellate Division, Fourth Department confirmed the determination and final order. (*Matter of Adirondack League Club* v. *Board of Black Riv. Regulating Dist.*, 275 App. Div. 618.) The 1950 Legislature enacted an amendment to section 445 of the Conservation Law, effective April 20, 1950, providing that " No reservoirs for the regulation of the flow of streams or for any other purpose except for municipal water supply shall be hereafter constructed in Hamilton or Herkimer counties on the south branch of the Moose river by any river regulating board." (L. 1950, ch. 803.) The defendant asserts that this amendment bars the construction of the reservoir while plaintiffs allege it is not effective to prevent the completion of the reservoir and is unconstitutional and void under the Federal and State Constitutions, if construed as preventing the completion of the reservoir. The plaintiff is commencing a condemnation proceeding to acquire title for the State of New York of such lands of defendant as are required for the construction of the reservoir. The complaint seeks the declaratory relief heretofore stated.

The answer of the defendant, in addition to denials and certain admissions, sets up three separate, distinct and complete affirmative defenses. The first, in substance, alleges that the plaintiffs are without authority and are barred by law from

proceeding with the construction of the dam and reservoir by the 1950 amendment to section 445 of the Conservation Law. The second defense, in substance, alleges the making of the final order of the board, the proceeding brought by the defendant to review it and the decision of the Appellate Division. It further alleges that on July 11, 1950, the Court of Appeals reversed the orders of the Appellate Division; held that the 1950 amendment had "effectively and completely disposed of the Board's plan" and directed dismissal of the petition of the defendant "solely on the ground that the issues are moot". (*Matter of Adirondack League Club* v. *Board of Black Riv. Regulating Dist.*, 301 N. Y. 219, 222, 223.) The defendant in this defense asserts that in contemplation of law no plan for the construction of the reservoir now exists by reason of the decision of the Court of Appeals and the failure of the plaintiff to establish or re-establish any plan and to comply with the provisions of law requisite therefor. The third defense raises the issue that the plaintiffs are without power, authority or standing to question the constitutional power of the Legislature to adopt the 1950 amendment.

The defendant in moving pursuant to rule 113 submitted an affidavit of one of its attorneys which states, among other things, that such motion is made on the pleadings, on chapter 803 of the Laws of 1950, on the decision and remittitur of the Court of Appeals in *Matter of Adirondack League Club* v. *Board of Black Riv. Regulating Dist.* (301 N. Y. 219, *supra*) and the final order of the Supreme Court, Onondaga County, entered pursuant to such remittitur.

The plaintiffs served a supplement to the complaint which contained allegations in regard to the certificates of indebtedness. The plaintiffs, however, served no answering affidavit.

Rule 113 of the Rules of Civil Practice provides in part that "When an answer is served in any action, whether or not of the character specified above, setting forth a defense which is sufficient as a matter of law, where the defense is founded upon facts established prima facie by documentary evidence or official record, the complaint may be dismissed on motion unless the plaintiff by affidavit, or other proof, shall show such facts as may be deemed by the judge hearing the motion, sufficient to raise an issue with respect to the verity and conclusiveness of such documentary evidence or official record."

While a plaintiff may not move for summary judgment under this rule in an action for a declaratory judgment (*Muldoon* v. *Mid-Bronx Holding Corp.*, 175 Misc. 700, affd. 262 App. Div.

734, affd. 287 N. Y. 227; *Spaulding* v. *Hotchkiss,* 62 N. Y. S. 2d 151, 158) such summary judgment for the defendant dismissing the complaint for a declaratory judgment may be granted (*Dae Mfg. Co.* v. *Galante,* 302 N. Y. 607). (See, also, *Henricks* v. *Henricks,* 275 App. Div. 642, affd. 301 N. Y. 626; *Lederer* v. *Wise Shoe Co.,* 276 N. Y. 459; and Eighteenth Annual Report of N. Y. Judicial Council, February 14, 1952, Legislative Recommendation No. 12 relating to Summary Judgment in Action for Declaratory Judgment.)

The rule is recognized that upon this motion pursuant to the stated provision of rule 113 affidavits do not avail the defendant but dismissal of the complaint must be applied for solely on the basis of documentary evidence or official record (*Timmerman* v. *City of New York,* 69 N. Y. S. 2d 102, 114). If any of the defenses is found to be sufficient as a matter of law, summary judgment must follow if such defense is founded upon facts established prima facie by documentary evidence or official record and the plaintiffs have failed by affidavit, or other proof, to show any facts to raise an issue with respect to the verity and conclusiveness of the documentary evidence and official record. Some factual statements are contained in the submitted briefs. These, of course, must be ignored upon this motion because not incorporated in an affidavit.

In substance, it is the contention of the defendant that (a) the plaintiffs are without authority to seek and are completely barred from the relief demanded in the complaint by the so-called Stokes Act (L. 1950, ch. 803, amdg. Conservation Law, § 445) and under the decision of the Court of Appeals rendered in a proceeding between the same parties on July 11, 1950, and reported in 301 New York 219; (b) that the plaintiffs are without power, authority or standing to question the constitutional power of the State Legislature to adopt the Stokes Act or to cut down or otherwise restrict plaintiff's authority or sphere of action and (c) the Legislature and the Court of Appeals have effectively and completely disposed of the plaintiff's plan for the construction of a dam and reservoir on the south branch of the Moose River in Hamilton or Herkimer Counties and the plaintiffs have failed to establish or re-establish any plan for the construction of a dam or reservoir on the described location and have failed to comply with any of the provisions of law requisite for the establishment of such a dam or reservoir or for proceeding with the construction thereof.

Consideration will be given first to the contention that the plan of plaintiff board for the construction of the Panther Mountain dam and reservoir has been effectively and completely disposed of by the decision of the Court of Appeals in *Adirondack League Club* v. *Board of Black Riv. Regulating Dist.* (301 N. Y. 219, *supra*). Therein it was said (pp. 221–222): '' These proceedings were commenced by petitioners against the Board of the Black River Regulating District (hereinafter called Board) to prohibit it from carrying out its proposed plan to take land to construct a reservoir and dam on the south branch of the Moose River (a tributary of the Black River) in Herkimer County, N. Y. It was estimated that the project would require the condemnation of approximately 3,500 acres of land belonging to the Adirondack League Club, one of the petitioners, and the use of 1,500 acres of State-owned land — part of the Adirondack State Forest Preserve. The petitioners challenged the constitutionality of article 7 of the Conservation Law, under which the Board proposed to act. The Appellate Division decided the issues presented in favor of the Board. The petitioners then appealed as of right to this court on the ground that a constitutional question was involved but before the oral argument, and on April 20, 1950, the so-called Stokes Act (L. 1950, ch. 803) became law. That act, effective immediately, provided: ' * * * No reservoirs for the regulation of the flow of streams or for any other purpose except for municipal water supply shall be hereafter constructed in Hamilton or Herkimer counties on the south branch of the Moose river by any river regulating board.' Since the reservoir planned by the Board in the instant case, was concededly not ' for municipal water supply ' *and since no construction had actually been commenced, the action on the part of the Legislature effectively and completely disposed of the Board's plan.''* (Emphasis supplied.)

After declining to review the correctness of the Appellate Division's decision '' to the same extent that it would have done if the Stokes Act had not been passed '' and commenting on the board's suggestion that the act be declared unconstitutional, the court stated its decision as follows (p. 223):

'' Since dismissal of the appeal would leave in effect the decision of the Appellate Division as a precedent and since we have not passed upon the merits of that decision, the proper practice here is to reverse the order of the Appellate Division and to remit the proceedings to Special Term with directions to dismiss the petitions, not on the merits, but solely upon the

ground that the issues are moot. (*Wilmerding* v. *O'Dwyer,* 297 N. Y. 664.)

"The orders should be reversed, without costs and the proceedings remitted to Special Term, with directions to dismiss the petitions solely upon the ground that the issues are moot."

It seems clear that when the petitions to review the final determination of the board were dismissed by Special Term, as directed by the opinion and remittitur, the final plan of the board directing construction of the reservoir was disposed of by implication of law as well as the language of the court. An examination of sections 453 and 454 of the Conservation Law discloses at once the fallacy of any other conclusion. After the board finally determines that the proposed reservoir shall be made it is required to make a final order, cause same to be filed and forthwith give notice thereof by publication (§ 453). Thereafter, any person or public corporation affected by the final determination may review the same by certiorari. Application for a certiorari order must be made within thirty days or the plans, maps, specifications, statements and estimates become the final and established ones of such reservoir. Section 454 further provides that upon such review the court may direct the modification of the final order.

This procedure was followed in connection with the proposed construction of this reservoir. The Appellate Division confirmed the determination of the board (*Matter of Adirondack League Club* v. *Board of Black Riv. Regulating Dist.,* 275 App. Div. 618, *supra*). Before argument of the appeal in the highest court the Stokes Act was passed with the resulting dismissal of the petition of the defendant in this action. If it may be said that the final determination and plan did not fall with such dismissal, the question naturally arises as to when, where and in what forum the defendant is to have its day in court as provided by section 454 of the Conservation Law and article 78 of the Civil Practice Act.

The plaintiffs' answer, as taken from their brief, is "that if the Stokes Act is unconstitutional we may proceed to condemnation of the sole parcel of private lands needed, that owned by the Club (defendant). In that condemnation action the Club may raise all questions as to the necessity and validity of the proposed taking just as was done in the two precedent cases, the *Stillwater Reservoir* case where our board was plaintiff and the *Sacandaga* case involving the Hudson River Board. See 235 N. Y. 600 and 249 N. Y. 445, both condemnation cases."

This, of course, would wholly and completely deprive the defendant of an opportunity to have the Court of Appeals pass upon the questions raised by it in the proceeding to review the final order of the board as given to it by the Conservation Law and the Civil Practice Act. It is unnecessary to explore the Condemnation Law to ascertain if defendant's rights in a proceeding thereunder would be as full and complete as under section 454 of the Conservation Law. When a statutory right is given a party affected by the final determination of a board, this court may not deprive the party of such a right.

As heretofore stated, counsel for plaintiffs makes reference to *Board of Black Riv. Regulating Dist.* v. *Ogsbury* (235 N. Y. 600, affg. 203 App. Div. 43). In the latter opinion the court said that " It is to all intents and purposes a default judgment " (p. 47) and declined to pass upon the question presented upon the record. In both cases cited by plaintiffs the owners of properties apparently were content to await condemnation proceeding. That is not a precedent, however, to deprive the defendant in this action of the right to review the determination and final order of the board given to the former by section 454 of the Conservation Law.

If any doubt remained it is dispelled by the express language contained in the opinion of the Court of Appeals that " since no construction had actually been commenced, the action on the part of the Legislature effectively and completely disposed of the Board's plan ". (*Adirondack League Club* v. *Board of Black Riv. Regulating Dist.*, *supra*, p. 222.) It was the basic fact of nullification of the plan by the Stokes Act which made moot the issues in that litigation. Otherwise, the Court of Appeals could have and would have decided the matter on its merits. If the plaintiff board had doubt as to the scope of the decision it was not without remedy at that time (cf. *Matter of Flushing Hosp. & Dispensary*, 288 N. Y. 735, and *Brady* v. *Blackett-Sample-Hummert, Inc.*, 285 N. Y. 540). Instead, it permitted an order to be entered by the court dismissing the petition of the present defendant to review its determination to construct the reservoir " solely upon the ground that the issues are moot ". The board, in substance, now asks this court to eliminate the defendant's right to review the determination given it by the Conservation Law and relegate the latter to such defenses as it might be able to interpose in a condemnation proceeding.

Section 457 of the Conservation Law provides that when the final order has been made, the board shall proceed to acquire

such real estate as may be necessary for the construction of the reservoir. The complaint in this action (par. 17) alleges the making of the determination and final order of plaintiff board after the required public hearing and the filing thereof in each required county clerk's office in November, 1948. The complaint contains no allegation of any further determination and final order as provided for in part V of article 7 of the Conservation Law. The documentary evidence and official records submitted upon this motion conclusively prove that the determination and final order made by the plaintiff board on November 11, 1948, became null and void upon the dismissal of the petition by this court pursuant to the direction of the Court of Appeals. In contemplation of law, no plan for the construction of a reservoir at Panther Mountain now exists and the plaintiff is not entitled to maintain condemnation proceedings against the defendant to acquire lands owned by it for construction of Panther Mountain Reservoir.

This conclusion having been reached it follows that plaintiffs may not prosecute this action for the sole purpose of obtaining an advisory opinion as to the constitutionality of chapter 803 of the Laws of 1950 (Stokes Act) for there is no justiciable issue presented (cf. *James* v. *Alderton Dock Yards,* 256 N. Y. 298, 305; *Reed* v. *Littleton,* 249 App. Div. 310, 312). The individual plaintiffs have no legal capacity to test the constitutionality of the act (*Bull* v. *Stichman,* 273 App. Div. 311, affd. 298 N. Y. 516).

The defendant is entitled to an order dismissing the complaint and granting summary judgment. The remaining motions are dismissed as they are now academic. Submit order.