Hon. Peter A.A. Berle Commissioner Department of Environmental Conservation
Hon. William C. Hennessy Commissioner Department of Transportation
This is in response to Commissioner Berle's letter of February 10, 1978 and Commissioner Hennessy's letter of February 28, 1978, as supplemented by Commissioner Berle's letter of March 23, 1978 and a letter dated July 5, 1978 from the Department of Environmental Conservation.
The aforementioned letters advise that the Department of Transportation desires to relocate its "Wawbeek [Highway] Maintenance Facility" from its present location "on the junction of Routes 3 and 30 immediately adjacent to the paved highway" to approximately four acres of a nearby "abandoned Civilian Conservation Corps camp on Forest Preserve land" (Commissioner Berle's letter of February 10, 1978), which camp is now unimproved and consists of generally open land since macadam topped service roads have discouraged natural tree growth. The following questions are posed with respect to the proposed relocation:
 "1. Does the Department of Environmental Conservation have the authority to grant the Department of Transportation a temporary revocable permit for such use?
 "2. May the Forest Preserve land in question be transferred to the Department of Transportation pursuant to the provision in Article XIV, Section 1 of the New York State Constitution permitting the `relocating, reconstructing and maintaining' of highways on up to 400 acres of Forest Preserve land?"
I am advised that the present facility extends along the highway for approximately 600 feet in an area where there is limited sight distance from either direction, and that there is insufficient room for both a truck and a payloader to be off the highway during loading operations. It is not questioned that there is a "serious traffic hazard created by the present location of the Wawbeek facility" (letter dated March 7, 1978 from Commissioner Hennessy to Commissioner Berle).
It further appears that the use of the abandoned CCC camp* would eliminate the hazard since the camp is situated some 300 feet off the State highway, and visibility on the highway from either direction of the entrance road is unobstructed for about one-half mile.
Commissioner Berle has advised me (in his letter of March 23, 1978) that the following is contemplated at said site:
 "1. Widening of the existing roadway from Route 30 requiring the cutting of 18 to 20 plantation trees, each three to five inches in diameter;
"2. Placing of a gravel roadbed on such roadway;
 "3. Construction of a loading building/warming shed (see photograph) approximately 10 feet by 20 feet in size and placed on skids, not a permanent foundation;
 "4. Placement of approximately 8,000 cubic yards of sand; and
 "5. Construction of a one foot high berm around certain stockpile areas."
Prior to answering the specific questions posed, it is necessary to address the basic issue of whether the use of Forest Preserve land for a Department of Transportation highway maintenance facility is permissible under Article XIV, § 1 of the New York State Constitution, which, as amended in 1957, excludes from the "forever wild" provisions thereof certain limited "relocating, reconstructing and maintaining * * * of existing state highways [in the Forest Preserve] for the purpose of eliminating the hazards of dangerous curves and grades * * *"
As stated by one of my predecessors (1934 Op. Atty. Gen. 274), in discussing permissible uses of the Forest Preserve:
 "* * * there is a constant danger upon the one hand of following so strict a construction as to make it a dead hand laid upon all attempts to make it most fully available for its real purpose, and upon the other the persistent efforts to treat all practical concessions from the strict letter as opening wedges, justifying further and greater yielding to reach the ultimate point of absolute license. Its true purpose must be achieved between these extremes."
The basic law concerning permissible uses of the Forest Preserve is set forth in Association for the Protection of the Adirondacks v. MacDonald,253 N.Y. 234 (1930), affirming 228 App. Div. 73 (3rd Dept., 1930), wherein the Courts declared unconstitutional a statute authorizing construction of a bobsled run in the Forest Preserve which would have necessitated the cutting of some 2,500 trees. In that case, the Court of Appeals further stated (253 N.Y., at p. 238):
*Although only of limited relevance to the questions posed, it is noted that this camp (together with other such camps) was the subject of an opinion by one of my predecessors (1935 Op. Atty. Gen. 325). In that opinion, it was concluded that the camps could be established on Forest Preserve land provided that no timber be cut and no permanent structures be erected.
 "The words of the Constitution, like those of any other law, must receive a reasonable interpretation, considering the purpose and the object in view. * * * The Adirondack Park was to be preserved, not destroyed. Therefore, all things necessary were permitted, such as measures to prevent forest fires, the repairs to roads and proper inspection, or the erection and maintenance of proper facilities for the use by the public which did not call for the removal of the timber to any material degree."
More recently, in Helms v. Reid, 90 Misc.2d 583 (Sup.Ct., Hamilton Co., 1977), the Court noted (pp. 593-4): "[t]hese standards of `reasonable' and `necessary' obviously raise problems in the implementation of such a decision and require factual determinations as to each use sought to be made of the preserve"; and then stated (at p. 598):
 "It does not seem to be reasonable to interpret the `forever wild' clause as requiring a constitutional amendment any time any timber whatsoever is to be cut in the preserve no matter what the purpose."
With these principles in mind, I note that although the 1957 Highway Amendment to Article XIV, § 1 of the Constitution, did not specifically provide for the elimination of a highway hazard created by a poorly located maintenance facility, the intent of the Amendment would cover such a situation. The New York State Joint Legislative Committee on Natural Resources (which spent more than five years developing the Highway Amendment) stated in a pamphlet entitled, "It's Your Forest Preserve":
 "Protection of human life is the principal purpose of this amendment. Its approval will permit the elimination of dangerous curves, grades, and other highway hazards within the State Forest Preserve. * * *" (Emphasis mine.) This pamphlet was distributed to the People of New York before they voted on the proposed Amendment.
In an analogous situation, I was faced with the question of whether an amendment to Article XIV, § 1, which authorized the development of ski trails on Whiteface Mountain, would permit the construction of "appurtenances" — although such were not specifically authorized. It being clear that the voters, in approving the Amendment, understood that it would include "appurtenances", I opined that the construction ofappurtenances was permissible since the Amendment "was intended and must be interpreted to authorize a ski trail development in the fullest sense * * *" (1957 Op. Atty. Gen. 197, 199).
Similarly, it can only be concluded that the People of the State of New York, when approving the 1957 Highway Amendment, desired to have highway hazards eliminated* — provided, of course, that this be done without unnecessary cutting or destruction of trees or in any other manner unreasonably impairing the "wild forest" character of the Forest Preserve — and to interpret the Amendment otherwise would subvert its intent. Thus, the proposed relocation is, in my opinion, permissible pursuant to the 1957 Highway Amendment to Article XIV, § 1 of the Constitution.
Accordingly, pursuant to the power conferred upon it by Environmental Conservation Law, § 9-0105(15) to "issue permits for the temporary use of the forest preserve", the Department of Environmental Conservation has authority to grant the Department of Transportation a temporary revocable permit for the relocation of its Wawbeek Maintenance Facility to the abandoned CCC camp, which permit may be limited to the herein before quoted "contemplated" items set forth in Commissioner Berle's letter, dated March 24, 1978.
As to the second question, implicit in the 1957 Highway Amendment's granting of authority to use portions of the Forest Preserve for the elimination of highway hazards is the right to transfer to the Department of Transportation, pursuant to Public Lands Law, § 3 (4), so much jurisdiction as is necessary to accomplish the Amendment's purpose. Commissioner Berle may, however, find that the purpose can be accomplished by merely the grant of a temporary revocable permit, and thus eliminate the need for any transfer (see, 1946 Op. Atty. Gen. 175).
* In this respect, I note that long prior to the 1957 Highway Amendment one of my predecessors concluded that a reasonable cutting of trees in, and negligible impairment of the terrain of, the Forest Preserve were permissible for highway safety purposes. (See 1931 Op. Atty. Gen. 142 and 1936 Op. Atty. Gen. 251.)