Hon. Henry G. Williams Commissioner New York State Department of Environmental Conservation
Your counsel has asked whether agents of the New York State Department of Environmental Conservation (DEC) may cut live-standing trees for use in the maintenance of existing trails in the forest preserve. I understand that these trees would be used only to construct essential maintenance structures actually necessary to lessen the destruction of vegetation, soil compaction and erosion caused by heavy use of popular and steep trails.
DEC has developed a trail system over the years to provide the public with access to the forest preserve and to enable the public to enjoy its beauty. Some of the foot trails, particularly in the high peaks region, are deteriorating because of trail erosion from heavy public use. Measures are required to curb soil erosion on these trails and to channel hikers onto narrow wooden beams to traverse fragile bogs and wet areas. Where feasible, DEC assures us that it will utilize locally available materials such as rocks and stones to perform these functions.
Some of these maintenance structures, however, must be constructed of wood and the use of live-standing trees for this purpose is considered necessary to prolong the useful life of these structures. The question is whether the cutting of live-standing trees in the forest preserve constitutes a violation of the "forever wild" provision of the Constitution which provides:
 "The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed" (NY Const, Art XIV, § 1).
The forest preserve has been protected by this unique and stringent constitutional safeguard and its predecessor legislation for one hundred and one years. Additionally, periodic assessments of new threats to the forever wild character of the preserve have sparked new studies culminating in additional legislative and regulatory measures, designed to further safeguard the preserve and define its permissible uses. It is appropriate to consider the Constitution together with these latter day measures in determining whether some tree cutting is permissible for trail maintenance necessary to protect the preserve from problems caused by the erosion problems described above.
DEC has responsibility for the care, custody and control of the Adirondack and Catskill Forest Preserves (Environmental Conservation Law, § 3-0301[1][d] and Art 9). Section 9-0105(7-a) of the Environmental Conservation Law authorizes DEC to acquire real property necessary to establish a system of trails in the Adirondack and Catskill Parks and to develop and improve these trail systems in order to make them suitable and available for public use.
DEC's administration of the Adirondack Forest Preserve must conform with unit management plans developed in consultation with the Adirondack Park Agency for each unit of forest preserve land within the Adirondack Park classified pursuant to the Adirondack Park State Land Master Plan (Executive Law, § 816[1]). In a recent decision upholding the State Land Master Plan's ban on motorized vehicles on certain State-owned bodies of water in the Adirondack Park, a federal court noted that:
 "The provisions of the Plan, as evidenced by its history and language and as implemented in the DEC regulations, pay homage to the State's foresight in preserving the integrity of its undeveloped lands" (Baker, et al. v. Dept. of Env. Cons., et al.,
USDC, NDNY, decision dated May 16, 1986, 85-CV-145 [McCurn, J]).
DEC has recently promulgated the Catskill Park State Land Master Plan to guide the development of unit management plans for the units of land comprising the Catskill Forest Preserve.
In its 1970 report, "The Future of the Adirondacks, Volume I", the Temporary Study Commission on the Future of the Adirondacks recommended,inter alia, that:
 "In areas of the preserve classified as wilderness and primitive, the goals should be perpetuation of natural plants and animal communities where the influence of man is not apparent.
 "Except for trails, foot-bridges, fish barrier dams and scattered lean-tos, no new structures should be constructed in wilderness and primitive areas . . .
 "Only public outdoor recreation that will not destroy or harm the wild forest environment should be encouraged . . ."
In Assn. for the Protection of the Adirondacks v MacDonald, 253 N.Y. 234
(1930), the Court of Appeals decided that a State statute authorizing the construction of a bobsleigh run on State land in the forest preserve violated the "forever wild" provision of the State Constitution. The Court indicated that the "forever wild" provision dates back to the Constitution of 1894 and its purpose is to prevent the cutting, destruction or sale of timber in the forest preserve as had previously been permitted by legislation (id., p 238). To accomplish this result it was believed necessary to close all gaps and openings in the law through a provision in the State Constitution prohibiting the cutting or removal of timber from the forest preserve (ibid.). The Court said, however, that not all cutting is prohibited:
 "The Adirondack Park was to be preserved, not destroyed. Therefore, all things necessary were permitted, such as measures to prevent forest fires, the repairs to roads and proper inspection, or the erection and maintenance of proper facilities for the use by the public which did not call for the removal of the timber to any material degree. The Forest Preserve is preserved for the public; its benefits are for the people of the State as a whole. Whatever the advantages may be of having wild forest lands preserved in their natural state, the advantages are for every one within the State and for the use of the people of the State. Unless prohibited by the constitutional provision, this use and preservation are subject to the reasonable regulations of the Legislature.
• • •
 "What may be done in these forest lands to preserve them or to open them up for the use of the public, or what reasonable cutting or removal of timber may be necessitated in order to properly preserve the State Park, we are not at this time called upon to determine. What regulations may reasonably be made by the Commission for the use of the park by campers and those who seek recreation and health in the quiet and solitude of the north woods is not before us in this case. The Forest Preserve and the Adirondack Park within it are for the reasonable use and benefit of the public, as heretofore stated. A very considerable use may be made by campers and others without in any way interfering with this purpose of preserving them as wild forest lands." (Id., pp 238-241.)
Thus, the Court of Appeals indicated that reasonable measures may be taken in order to safeguard the forest preserve and make it available for recreational uses. The Court held, however, that the cutting of 2,500 trees for the construction of a bobsleigh run is not a reasonable use and, therefore, is forbidden by the Constitution (id., pp 241-242). Under the "forever wild" provision, the cutting down of trees "to any substantial extent for any purpose" is prohibited (id., p 242).
In a 1933 opinion of this office we referred to the above-quoted language in the MacDonald opinion and concluded that reasonable cutting and removal of timber for building a road necessary for protection of the forest preserve from fire is consistent with the "forever wild" provision of the Constitution provided that the destruction of timber does not take place to any material degree (1933 Report of Attorney General 369). A later opinion also dealt with the constitutionality of measures to protect the forest preserve. We concluded that the State, consistent with the "forever wild" provision of the Constitution, could engage the services of private loggers to remove numerous trees downed by a hurricane in order to eliminate the fire hazard posed to the forest preserve (1950 Report of Attorney General 154). Once again we relied on the language in MacDonald indicating that all activities necessary in the forest preserve, such as measures to prevent forest fires, are consistent with the purposes of the "forever wild" provision of the Constitution (id., p 155).
In a 1934 opinion we dealt with whether the Conservation Commissioner could permit the use of the State forest preserve by the United States Coast and Geodetic Survey for the purpose of placing triangulation stations on mountains in the preserve (1934 Report of Attorney General 309). It was proposed that these stations be located on mountain tops and where these areas were wooded it would be necessary to erect signal towers in order to establish unimpeded vision from one mountain to another (id., p 310). To establish these towers, a small amount of clearing of trees would be required because of interfering branches and tree tops (ibid.). We found that the establishment of these stations was in aid to the conservation work of the State and, therefore, was consistent with the "forever wild" provision of the Constitution (ibid.).
Two other opinions of this office, however, are particularly relevant to the question at hand in that they dealt with the use of the forest preserve for recreational activities. In 1934 Report of Attorney General 268, the question was whether the Conservation Commissioner could construct cross-country ski trails in the forest preserve. We citedMacDonald, in reasoning that the framers of the "forever wild" provision of the Constitution intended that proper facilities be maintained for the most complete enjoyment of the forest preserve by the public provided that these facilities did not call for the removal of timber to any material degree (id., p 269). The opinion concluded that the Conservation Commissioner could authorize the construction of ski trails in the forest preserve with a minimum of timber removal, where such trails would increase the use of these lands by the public without affecting their true natural character.
In a 1935 opinion, we considered whether trees could be removed for the purpose of opening vistas or views in connection with the building of pedestrian trails in the forest preserve (1935 Report of Attorney General 274). We cited MacDonald and concluded that the establishment of these views or vistas is consistent with the purpose of the forest preserve provided, however, that the removal of trees does not exceed the point of immateriality (id., p 275).
We do not address here the question of whether, in light of present day technology, firefighting techniques and theories about the harms versus natural benefits of some fires in wild forest areas, the measures approved in those earlier opinions would today be considered "necessary" to protect the preserve. Neither are we asked to decide whether it would be appropriate today to further encourage heavier recreational uses of the fragile preserve by cutting trees to open new ski trails or scenic vistas.
Trail maintenance and hiking, if managed carefully, are activities consistent with the wild forest character of the preserve. We must be cognizant, however, that the Northway and other modern highways and transportation systems have made forest preserve lands accessible to millions more people than those who created the magnificent preserve could ever have imagined. At the same time, the dramatic growth of leisure time and economic means available to the public for outdoor recreation makes it critical that great care be taken in determining how much tree cutting may occur in the preserve to facilitate trail maintenance for recreational use, while maintaining the essential wild forest character of the preserve.
Only limited tree cutting may be undertaken by DEC that is carefully designed and necessary to maintain existing trails in order to protect the forest preserve, while ensuring its reasonable accessibility to the public for hiking, an activity consistent with the wild forest character of the land. It would be incumbent upon the Commissioner and DEC to plan scrupulously and supervise any tree cutting and any design and construction of maintenance structures in order to ensure that these activities do not upset the delicate balance necessary to allow recreation in the preserve without interfering with its wild forest character.
We cannot overemphasize that planning must be specific and meticulously undertaken with close supervision. It is critical that plans include safeguards to ensure proper implementation and be carefully reviewed and approved before actual tree cutting takes place. Once a towering tree is cut it cannot be replanted. It is fundamental and crucial that no tree or trees are cut unnecessarily. Tree cutting and trail maintenance must be supervised diligently and closely. There are no adequate remedies for "after the fact" discoveries. Such cutting in any unit of forest preserve must also be done in strict conformance with the management plan adopted for that unit.
Therefore, in our view, the carefully planned and supervised selective cutting in the forest preserve of only those few scattered trees necessary for the maintenance of popular and steep trails to lessen soil compaction, erosion and the destruction of vegetation may be conducted consistent with the "forever wild" provisions of the State Constitution, as long as it does not occur to any material degree.