Hon. Michael D. Zagata Formal Opinion Commissioner, Department of No. 96-F2 Environmental Conservation 50 Wolf Road, Rm. 608 Albany, N Y 12233-1500
Dear Commissioner Zagata:
Your counsel has asked whether the Department may issue four temporary revocable permits ("TRPs") to the Niagara Mohawk Power Corporation to authorize the installation of electrical cable on the beds of Raquette Lake and Big Moose Lake, which lie in the forest preserve. Five private residences would receive power through the issuance of three TRPs applicable to Raquette Lake. Eight private residences would receive power through issuance of a TRP applicable to Big Moose Lake. Significantly, these eight residences can obtain power through lines on private land outside the forest preserve.
The Department is authorized to issue permits for the temporary use of the forest preserve. Environmental Conservation Law § 9-0105(15). You state that the sole purpose of the proposed cables is to provide electrical service to these thirteen private seasonal residences, represented in the four applications.
You also note that in addition to the installation of the submarine cables, the diagrams submitted with the applications indicate that switchgear, padmount transformers, and/or wooden transformer houses would be constructed on the shore near the private residences at points where the submarine cables both enter and exit the water. After construction, the submarine cables and associated onshore structures will remain on the beds of the lakes and the onshore areas for the duration of the permit.
The inquiry arises because Article XIV, § 1 of the State Constitution in part provides that
 The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed.
This unique and stringent constitutional safeguard has protected the forest preserve for 100 years.
The purpose of the constitutional provision, as indicated by the debates in the Convention of 1894, was to prevent the cutting, destruction or sale of timber as had previously been permitted by the Legislature to the detriment of the forest preserve. Association for the Protection of theAdirondacks v. MacDonald, 253 N.Y. 234, 239-240 (1930). The preservation of the forest would in turn preserve the watershed feeding the mountain streams and lakes which eventually feed the rivers. Revised Record of the Constitutional Convention of the State of New York, 1894, Vol IV, pp 130-134. To accomplish this purpose, it was thought necessary to close the gaps in the law and to prohibit the cutting or removal of trees to a substantial extent. MacDonald, supra, pp 239-240. The intention was to establish a strict provision that would prohibit the abuses that had occurred and to preserve the land as a recreational resource for the people of the State. Constitutional Convention, supra, pp 155-156; Kenwellv. Lee, 361 N.Y. 113, 117 (1933).
While MacDonalddealt with the cutting of trees for a bobsled run, it provides guidance in construing the "forever wild" provision. In MacDonald, the Court of Appeals, in dicta, emphasized that the forest preserve is for use by the public.
 The Forest Preserve is preserved for the public; its benefits are for the people of the State as a whole. Whatever the advantages may be of having wild forest lands preserved in their natural state, the advantages are for every one [sic] within the State and for the use of the people of the State. Unless prohibited by the constitutional provision, this use and preservation are subject to the reasonable regulations of the Legislature.
. . .
 What regulations may reasonably be made by the Commission for the use of the park by campers and those who seek recreation and health in the quiet and solitude of the north woods is not before us in this case. The Forest Preserve and the Adirondack Park within it are for the reasonable use and benefit of the public, as heretofore stated. A very considerable use may be made by campers and others without in any way interfering with this purpose of preserving them as wild forest lands.
McDonald, supra, pp 238-241.
Any development in the forest preserve which is not consistent with Article XIV, § 1 must be specifically authorized by constitutional amendment. In the past, amendments have been adopted by referenda to allow for the construction and maintenance of particular highways, ski trails, land fills and an airport. NY Const, Art XIV, § 1. These amendments to the Constitution allowing for development in the forest preserve have been strictly construed. 1933 Op Atty Gen 395; 1954 Op Atty Gen 157; 1990 Op Atty Gen No. 90-F4.
In responding to the question you have raised, we must take into consideration the strict construction of the "forever wild" provision as indicated by the debates before the Constitutional Convention, the amendments to the Constitution to allow inconsistent uses and their strict construction, and by the Court of Appeals in MacDonald.
Raquette Lake and Big Moose Lake are indisputably part of the forest preserve. While obviously the laying of cable on the lake bed poses no threat to wooded areas, the Constitution prohibits the sale, lease or exchange or taking by any corporation of anyland that is part of the forest preserve. The prohibition applies not only to wooded areas but to all forest preserve land. Further, as indicated earlier, the debates demonstrate an intent to preserve the watershed feeding the streams and lakes which in turn serve as a source of water for the rivers. In that the two lakes are protected by this constitutional provision, we must consider whether the grant of these TRPs to place cable on the beds of the two lakes within the forest preserve constitutes the grant of an interest in forest preserve land that is prohibited.
It is a general principle of real property law that the name an interest is given in the document creating it is not determinative of the actual nature of that interest. G.L. P.J.R.R. Co. v. N Y G.L.R.R. Co.,134 N.Y. 435, 439 (1892); Lordi v. County of Nassau, 20 A.D.2d 658, 659
(2d Dept 1964); see, Saratoga State Waters Corp. v. Pratt, 227 N.Y. 429
(1920). This principle is evident in prior opinions concluding that TRPs for use of reforestation or forest preserve land were in fact an impermissible grant of a permanent interest in these lands. See, e.g., 1975 Op Atty Gen 46; 1954 Op Atty Gen 170; 1925 Op Atty Gen 170.
In a prior opinion, for example, we concluded that the Department did not have authority to grant a "temporary revocable license" for the construction of an electrical transmission line, steel support towers and access route through reforestation areas which, under Article XIV, § 3 may not be leased, sold or exchanged, or be taken by any corporation, public or private. 1975 Op Atty Gen 46. The opinion reasons that the nature of the interest created by the proposed license depended on the intent of the parties and the nature and physical characteristics of the usage.
 [T]he nature of the interest which would be created by the proposed "license" is not fixed by the label placed thereon but depends upon the intent of the parties and the nature and physical characteristics of the usage. . . .
 . . . Such clearing operations and construction . . . negate any possibility that the Department of Environmental Conservation could, as is the basic characteristic of a "temporary revocable license", resume full possession and control at will.
 Furthermore, since Public Service Law, § 126(1)(d), specifically provides that the Public Service Commission may not approve construction of a major utility transmission system unless "* * * such facility conforms to a long-range plan for expansion of the electric power grid of the electric systems serving this state * * * "(emphasis added), and the physical characteristics and immense construction cost of such a line clearly establish that a permanent usage is intended, it is beyond cavil that the proposed transmission line is to be constructed, operated and maintained on a permanent, rather than a temporary, basis.
The temporary license in fact constituted the grant of a permanent interest in the land in violation of the Constitution. Also, the proposed use was found to be inconsistent with reforestation purposes. 1975 Op Atty Gen 46 at 48-49, revd on other grounds, 1975 Op Atty Gen 49. Therefore, characterization of a TRP as temporary and revocable is not controlling in the presence of facts which indicate that a more permanent interest would be granted by your Department.
As in these prior opinions, the facts in your request indicate that the Department would be granting a more permanent interest in forest preserve land. Your Department has informed us that it does not foresee that the four TRPs for electrical cable would be revoked at any future date. It is clear that the installation of the cable to provide electricity to these thirteen private residences would necessitate an investment by Niagara Mohawk. The installation would necessitate the construction of switchgear, padmount transformers, and/or wooden transformer houses at points where the submarine cables both enter and exit the water. The transformers, which are about two feet high, would be placed on concrete pads that measure three feet by three feet. These considerations and the fact that the cable would be a source of amenities for the residences, such as heat and light, militates against treating the permits as temporary. Thus, it appears at the outset that the parties to the TRPs envision transfer of an interest that is neither temporary nor readily revocable.
Applying the reasoning in MacDonald, supra, the cable would not serve a public use permitted in the forest preserve. It would not benefit the public at large by facilitating the enjoyment of the preserve. For example, the cable would not provide electricity to a public campground or visitor station. It is proposed strictly to provide electricity to thirteen private residences. While we recognize that the cable would have a minimal aesthetic impact — it is below the water line and the Department has indicated that it would not adversely affect marine life or navigation — these factors are not constitutionally germane.
We are constrained by the absolute language of the constitutional provision that land in the forest preserve shall not be leased, sold or exchanged, or be taken by any public or private corporation (People exrel. Turner v. Kelsey, 180 N.Y. 24, 26 [1904]; People v. Douglass,217 App. Div. 328, 329-330 [3d Dept 1926]) and by the strict interpretation given to the "forever wild" provision by the courts.Kenwell v. Lee, supra. Applying the above reasoning to the facts presented, we conclude that the grant of the permits requested would constitute the granting of an interest in land prohibited by Article XIV, § 1 of the New York State Constitution.[1] The grant would be neither temporary nor revocable.
Alternatives may exist, however, for the obtaining of electricity. The eight residences on Big Moose Lake, according to your staff, can receive electricity through overhead lines on private property outside the forest preserve. The other five residences on Raquette Lake presumably could utilize generators to obtain electricity.
We conclude that the Department of Environmental Conservation may not issue four temporary revocable permits to authorize installation of electrical cable and other equipment on the beds and shorelines of Raquette Lake and Big Moose Lake.
Very truly yours,
DENNIS C. VACCO, Attorney General
[1] In two prior opinions, we concluded that the Department's predecessor could grant permits for the construction of power and telephone lines across forest preserve lands if it made a determination that the wild forest character of the lands would not be impaired by the proposed construction. 1945 Op Atty Gen 168; 1949 Op Atty Gen 132. Neither opinion considered the question whether the proposed permit would grant an interest in the forest preserve lands that was prohibited by the Constitution. In the 1945 opinion, however, the facts indicate that power would be provided not only to the owner of a cottage but, in all likelihood, to a public campsite operated by the Department bringing the line within the public use exception recognized by MacDonald, supra. The analysis in the 1949 opinion, however, is constitutionally defective in that no consideration was given to whether an interest in property was granted in violation of Article XIV.