OPINION OF THE COURT
George L. Cobb, J.
Petitioner has commenced a hybrid proceeding challenging a Unit Management Plan for the Balsam Lake Mountain Wild Forest area (hereinafter UMP) seeking prohibition of application of the UMP, a declaratory judgment that the UMP violates article XIV of the New York State Constitution, a declaratory judgment that the UMP violates certain easements and harms plaintiffs lands, and CPLR article 78 review of the adoption of the UMP on the ground that respondents violated the provisions of the State Environmental Quality Review Act (hereinafter SEQRA [ECL art 8]).
*608 Respondents adopted the UMP in furtherance of the Catskill Park State Land Master Plan, which was adopted in order to provide classifications and guidelines for the uniform protection and management of State-owned lands within the Catskill Forest Preserve. Under the UMP, respondents intend to construct a number of small parking areas providing access to trails and primitive campsites, to relocate certain trails to avoid private lands and to construct new trails within the Balsam Lake Mountain Wild Forest area. Since respondents must necessarily cut a certain number of seedlings, saplings and trees to complete such projects, petitioner contends that the UMP is in violation of article XIV, § 1 of the New York State Constitution.
The Constitution provides, "[t]he lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed, or destroyed.” Petitioner contends that the cutting of as many as 2,000 "trees”, most of which are less than three inches diameter at breast height, constitutes the removal or destruction of timber.
This specific constitutional issue has rarely been litigated. The Court of Appeals and the Appellate Division in Association for Protection of Adirondacks v MacDonald (253 NY 234, affg 228 App Div 73) addressed legislation authorizing the construction of a bobsled run within the Adirondack Forest Preserve for the 1932 Winter Olympics. The Appellate Division addressed the legislative history of the New York State Constitution and found an intent to prevent any actions "which might convert this preserve into anything but a wilderness” (228 App Div, at 79). However, the Appellate Division found that the framers of the New York State Constitution obviously distinguished between "timber” and any form of tree or wood. They quoted the framers as stating, "[a]ny campers that cannot pick up something on the shores, that will not be timber, to warm themselves with, would better either carry in their fuel or stay out” (supra, at 78). The Appellate Division also discussed the 1915 Constitutional Convention which sought to change the wording of the New York State Constitution to "trees and timber” (supra, at 79). Thereafter, the Appellate Division found that the project involved "the cutting of 2,600 trees which must unquestionably be regarded as of 'timber’ size” (supra, at 82). Based upon an *609 agreed statement of facts, all 2,600 trees were in excess of 3 inches diameter at breast height, 480 trees were in excess of 8 inches and 33 trees were in excess of 20 inches. The project involved total clearing of between 4 and 5 acres, some of which constituted first growth hardwoods and involved the removal of some 60,000 board feet of timber. The Appellate Division held the legislation unconstitutional based both upon the substantial destruction of timber and the nature of the proposed project.
The Court of Appeals in affirming the Appellate Division determination rejected the absolutist argument that not even a single tree or even fallen timber or deadwood could be removed and stated that the constitutional provision must be interpreted reasonably. "[A]ll things necessary were permitted, such as measures to prevent forest fires, the repairs to roads and proper inspection, or the erection and maintenance of proper facilities for the use by the public which did not call for the removal of the timber to any material degree. The Forest Preserve is preserved for the public; its benefits are for the people of the State as a whole. Whatever the advantages may be of having wild forest lands preserved in their natural state, the advantages are for every one within the State and for the use of the people of the State. Unless prohibited by the constitutional provision, this use and preservation are subject to the reasonable regulations of the Legislature” (supra, 253 NY, at 238-239). It is thus clear that the Court of Appeals determined that insubstantial and immaterial cutting of timber-sized trees was constitutionally authorized in order to facilitate public use of the forest preserve so long as such use is consistent with wild forest lands.
With respect to the relocation of the Hardenberg Neversink Trail challenged herein, petitioner contends that the amount of cutting is of constitutional dimension. The relocated trail is in excess of two miles long and is approximately six feet wide. With the trail approximately 80% completed, 73 trees of timber size, that is three inches or more, have been cut, including one nine-inch tree and one six-inch tree which was dead. The remaining trees are three, four or five inches in diameter. It is estimated by the court that the entire cutting, including trees not of timber size, that is, less than three inches, amounts to little more than one cord of firewood. The great majority of such cutting will be completely decomposed within a few years leaving no trace of their existence but *610 providing increased growth opportunity for the remaining trees in the forest.
It is therefore determined the amount of vegetation, seedlings, saplings and timber-sized trees destroyed so far in the construction of the relocated Hardenberg Neversink Trail is not constitutionally prohibited, nor is the number of trees planned to be removed to complete such relocation. While the actual route for the Millbrook Ridge Trail has not been chosen and it is not known how many trees, saplings, seedlings and other vegetation must be destroyed, it may be presumed that the Department of Environmental Conservation, pursuant to its regulations concerning the construction of trails and the destruction of trees and timber, will comply with the provisions of the New York State Constitution. In the event that the Department of Environmental Conservation does not comply, petitioner could certainly challenge the specific trail route or construction techniques at an appropriate time.
Petitioner also contends that the construction of new trails in the Balsam Lake Mountain Wild Forest area violates that portion of the New York State Constitution which requires that forest preserve lands "be forever kept as wild forest lands”, arguing that new trails will increase human activity, thereby necessarily making such areas less wild. Based upon the decisions of the Appellate Division and Court of Appeals in Association for Protection of Adirondacks v MacDonald (supra), it appears that the framers of the New York State Constitution intended not to prevent or hinder public use of the forest, but to allow forested areas to revert to their natural or wild state without human interference with the natural succession of different types of trees, selective cutting or thinning to "improve” the timber, or the harvesting of any mature timber. There is no indication of any intent to maintain the forest in an "absolutely” wild state with no organized human alteration or intervention at all.
The Court of Appeals specifically held that facilities consistent with the nature of the forest preserve could be constructed for the use by the public, including camping and hiking. Such use facilitated by the construction of new trails or increasing parking and camping areas will almost certainly degrade the pristine quality of certain areas of the forest preserve. While it may be desirable to initiate a policy to refrain from actions which will have the effect of increasing human activity, such issues are not of constitutional dimension unless significant cutting of timber is involved. Accord *611 ingly, it is declared that the Unit Management Plan adopted for the Balsam Lake Mountain Wild Forest area does not violate the provisions of article XIV of the New York State Constitution.
The petition also seeks article 78 review of the adoption of the UMP on the ground that respondents failed to comply with the procedural and substantive requirements of SEQRA. SEQRA was enacted to ensure that all State agencies, including the Department of Environmental Conservation, engaged in careful and significant consideration of environmental issues before undertaking certain actions. The Court of Appeals recently set forth the standard of judicial review of a SEQRA determination. If the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion, it will be annulled. Substantively, an administrative body must identify all significant environmental issues, take a "hard look” at such issues, and make a "reasoned elaboration” of the basis for the determination. The threshold for requiring the preparation of an environmental impact statement rather than issuing a negative declaration is very low. Any indication that the action may have a significant effect on the environment requires preparation of an environmental impact statement (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 363; see also, H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232). It has also consistently been held that strict or literal compliance with the procedure of SEQRA is required (Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484; Matter of Schenectady Chems. v Flacke, 83 AD2d 460; Matter of Rye Town/King Civic Assn. v Town of Rye, 82 AD2d 474). Thus, even substantial discussion of and consideration of all environmental issues (Matter of Rye Town/King Civic Assn. v Town of Rye, supra), a subsequent analysis of similar issues outside of the SEQRA framework (Matter of Schenectady Chems. v Flacke, supra), or the clear intent of the action to have a beneficial effect (Matter of Niagara Recycling v Town Bd., 108 Misc 2d 277, revd on other grounds 83 AD2d 335, affd 56 NY2d 859), have been found to be insufficient compliance with SEQRA. In addition, the agency’s investigation of environmental issues under SEQRA must be adequately documented in order to permit meaningful judicial review of a determination to issue a negative declaration (Matter of Oak Beach v Lehman, 100 AD2d 906).
*612 In order to support a negative declaration and comply with the "reasoned elaboration” requirement, an agency must provide more than a " 'conclusory statement unsupported by empirical or experimental data, scientific authorities or any explanatory information’ ” (Matter of Di Veronica v Arsenault, 124 AD2d 442, 445). It also appears that in reviewing the environmental impact of the UMP, respondents were required to consider the difference between the lands as they are presently lawfully used, and not the difference between the current illegal camping and parking and future uses under the proposed development (see, Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd., 106 AD2d 868, 869).
The failure to consider any relevant area of environmental concern violates SEQRA. Even a record showing detailed consideration of many environmental issues was insufficient where the agency failed to consider the cumulative effects of numerous proposed projects (Matter of Save the Pine Bush v City of Albany, 117 AD2d 267, 270). Moreover, where the record contains any evidence of significant adverse environmental effects, and no alternatives to the proposed development are considered, issuance of a negative declaration is improper (Inland Vale Farm Co. v Stergianopoulos, 104 AD2d 395, affd 65 NY2d 718).
The negative declaration issued by respondents fails to contain a reasoned elaboration supported by empirical data and scientific authority. It is impossible to determine from the record what issues were considered at the time the negative declaration was issued or whether numerous submissions to the court constitute improper, after-the-fact rationalizations of respondents’ actions. The petitioner has shown that the UMP will almost certainly increase the legal use of the area substantially. Persons hesitant to park unlawfully or unsafely will likely now feel comfortable using large designated parking areas. New trails publicized by trail maps and hiking organizations are almost certain to increase hiking trafile in the area. It is also extremely likely that even with educational postings, abuses of the campsites immediately adjacent to the Beaverkill will occur. It is also possible that the plan to place limbs and brush along the trails to protect sensitive areas and endangered species may only serve as flags, indicating the presence of such species to hikers or even poachers. The negative declaration does not even consider such increased usage of the recreational facility and fails to consider the aesthetics of new trails in currently totally wild areas or the *613 camping impact on the Beaverkill. It states that the plan will mitigate soil erosion and compaction, not eliminate it, thereby implicitly indicating that the UMP may have an adverse impact. It also concedes the existence of critical plant and animal habitat and that the plan will "discourage hikers from straying off the trail”. Such statement also implicitly concedes that the construction of trails may have an adverse impact on such critical plant and animal habitat. It also appears that the environmental assessment form contains incorrect responses to questions at part 1, subdivision A, question 13, subdivision B, questions 16 and 17, part 2, questions 3, 5, 8, 11, 12 and 13.
The court therefore finds that respondents failed to take the requisite "hard look” or make a reasoned elaboration of the basis for the negative declaration. Moreover, based upon the submissions of the parties, the court finds that the UMP may have an adverse impact on the environment requiring preparation of an environmental impact statement. Accordingly, that portion of the petition challenging the UMP on the ground that respondents failed to comply with the provisions of SEQRA shall be granted.
The petition also alleges that the UMP, in designating a certain cross-country ski trail, has violated the terms of certain easements granted by petitioner’s predecessors in title to respondents’ predecessors in title and that use of the cross-country ski trail will harm petitioner’s lands. The easement in favor of the respondents was created by deed dated April 22, 1976 from the individual members of the former Balsam Lake Club to petitioner Balsam Lake Anglers Club. The easement was thereafter transferred to the Catskill Center for Conservation and Development and thereafter to the State of New York. The easement in favor of the State does in fact limit or condition the nature of ingress and egress allowed. However, the easements allow logging and hunting, which uses are materially greater than, and have the potential for substantially greater impact upon petitioners than cross-country skiing. Moreover, the easement refers to the existence of certain public trails and implicitly allows the continuation of such public trails. Those portions of the proposed cross-country ski trail challenged by petitioner have been in public use for decades as hiking and horse trails as indicated by trail maps published by respondent Department of Environmental Conservation and its predecessor for more than 60 years. Accordingly, it is determined that the UMP does not violate any of *614 petitioner’s property rights in and to the proposed cross-country ski trails.
The petition shall be granted to the extent that it is determined that respondents failed to comply with the provisions of SEQRA in adopting the UMP. The matter shall be remitted to respondent Department of Environmental Conservation for further proceedings consistent herewith. It shall further be declared that the UMP does not violate the provisions of the New York State Constitution or any of petitioner’s property rights in certain lands.