■ In the Matter of BALSAM LAKE ANGLERS CLUB, Appellant-Respondent, v DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents-Appellants. [605 NYS2d 795] —Crew III, J. Cross appeals from a judgment of the Supreme Court (Cobb, J.), entered February 19, 1992 in Ulster County, which partially granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, *inter alia,* annul a negative declaration issued by respondent Department of Environmental Conservation finding that the implementation of the Balsam Lake Mountain Wild Forest Unit Management Plan would not have a significant effect upon the environment.

In May 1985, respondent Department of Environmental Conservation (hereinafter DEC) adopted the Catskill Park State Land Master Plan (hereinafter Master Plan) to establish certain policies and guidelines relating to the management of State-owned lands located in the Catskill Forest Preserve. The Master Plan, *inter alia,* classifies each area or unit within the preserve according to its environmental sensitivity and requires that each unit be administered through a unit management plan. The controversy before us centers upon the unit plan adopted for the Balsam Lake Mountain unit, which has been classified as a "wild forest" area. The unit plan in question calls for, *inter alia,* the construction of five new parking lots, the designation of two existing campsites as lawful campsites, the relocation of existing trails and the construction of a new hiking trail, and the construction of a cross-country ski trail loop. DEC issued a negative declaration in accordance with the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA), finding that the unit plan would not have a significant effect upon the environment, and the plan was adopted in its final form in June 1989.

Petitioner, which owns land adjacent to State-owned lands managed by the unit plan, thereafter commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking to prevent the implementation of the unit

plan. Specifically, petitioner alleged that the unit plan had been adopted in violation of SEQRA and sought a declaration that the plan violated NY Constitution article XIV. Petitioner also sought a declaration that the proposed cross-country ski trail loop violated the terms of an easement granted by petitioner's predecessors in title to respondents' predecessors in title. After reviewing the parties' respective submissions, Supreme Court declared that the unit plan did not violate NY Constitution article XIV and, further, that the inclusion of the cross-country ski trail loop in said plan did not violate petitioner's property rights. Supreme Court further found, however, that DEC's negative declaration failed to comply with the mandates of SEQRA and remitted this matter to DEC for further consideration. These cross appeals followed.

Petitioner initially contends that the unit plan violates NY Constitution, article XIV, § 1 which provides, in relevant part, that "[t]he lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, *nor shall the timber thereon be sold, removed or destroyed"* (emphasis supplied). Although this provision would appear, as petitioner argues, to prohibit *any* cutting or removal of timber from the forest preserve, the Court of Appeals, noting that the words of the NY Constitution must receive a reasonable interpretation, has construed this provision as "prohibit[ing] [the] cutting or [the] removal of * * * trees and timber *to a substantial extent" (Association for Protection of Adirondacks v MacDonald,* 253 NY 234, 238 [emphasis supplied]). Thus, the court has indicated that only those activities involving the removal of timber "to any material degree" will run afoul of the constitutional provision *(supra,* at 238). Although petitioner may question the soundness of this interpretation, particularly in view of what it has characterized as the unambiguous and absolute prohibition contained in NY Constitution, article XIV, § 1, we elect, absent authority to the contrary, to follow the interpretation advanced by the Court of Appeals in *Association for Protection of Adirondacks v MacDonald (supra).*

We are similarly unpersuaded that the addition of five new parking areas and the relocation and construction of certain trails as proposed in the unit plan are improper uses of the forest preserve and/or involve unconstitutional amounts of cutting. The record before us indicates that approximately 350 trees have been or will need to be cut to accommodate the

trail relocation; the remaining cutting (312 saplings) concerns vegetative growth that DEC does not classify as trees. (The amount of cutting needed for the proposed new trail and parking lots has not yet been determined.) These proposed uses appear compatible with the use of forest preserve land, and the amount of cutting necessary is not constitutionally prohibited (cf., *Association for Protection of Adirondacks v MacDonald, supra*). Petitioner's remaining constitutional arguments, including its assertion that DEC erred in classifying the Balsam Lake Mountain unit as a "wild forest" area, have been examined and found to be lacking in merit.

Petitioner next contends that the proposed cross-country ski trail loop violates the terms of an easement granted by petitioner's predecessors in title to respondents' predecessors in title. The easement in question conveys to the grantee: "the right and easement to use the premises hereby conveyed with the exception of PARCEL B [the Club House], for ingress and egress to and from the adjoining land, for forestry and wildlife management on the adjoining land * * * and for conservation, scientific and educational purposes * * * provided that the exercise of such rights shall neither injure the premises conveyed hereby nor injure or threaten the ecological balance, indigenous wildlife or scenic values of said premises or the adjoining land nor interfere with the use and enjoyment of said premises * * * Said right and easement shall not include the right to create public trails across the premises hereby conveyed or to permit public trails across said premises other than presently existing public trails." Although the easement is undeniably limited in both scope and intensity of use, we reject petitioner's assertion that ingress and egress is permitted only in conjunction with the other purposes set forth therein. The commas before and after the phrase "ingress and egress" indicate that this was intended to be a valid and separate use under the easement; thus, the mode of ingress and egress is not limited to the extent claimed by petitioner (see generally, *Arnold v Fee*, 148 NY 214, 217) but, rather, may be accomplished "in such a manner as is reasonably necessary and convenient for that purpose" (*Minogue v Kaufman*, 124 AD2d 791, 792). We similarly reject petitioner's contention that hiking and cross-country skiing are not reasonable means of ingress and egress under the terms of the easement. As to the intensity of the use, there is no indication in the record that the seasonal use of that portion of the proposed trail located on petitioner's property will interfere with petitioner's use of the premises and/or "threaten the ecological balance".

Finally, the record as a whole supports Supreme Court's finding that the proposed cross-country ski trail loop will utilize existing trails for which public use has been continuing. We therefore conclude that petitioner's property rights have not been violated. Petitioner's remaining arguments on this point, including its assertion that it was denied due process, have been examined and found to be lacking in merit.

Finally, we must determine whether Supreme Court erred in annulling DEC's issuance of a negative declaration. "It is well settled that an administrative agency's SEQRA determination should be upheld if the agency 'identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination' " *(Matter of Citizens Accord v Town Bd.,* 192 AD2d 985, 987, *lv denied* 82 NY2d 656, quoting *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). To that end, a reviewing court should refrain from substituting its own judgment for that of the administrative agency that rendered the determination *(see, Matter of Citizens Accord v Town Bd., supra,* at 987).

Based upon our review of the record as a whole, we conclude that a rational basis exists for DEC's issuance of the negative declaration at issue. The areas of concern addressed by petitioner in its brief including, *inter alia,* concerns regarding the area's plant life, fish and wildlife, the amount of vegetative cutting necessary, disposal of human waste, degradation of the water supply and any critical plant or animal habitats existing within the unit, were identified in the environmental assessment form and/or referenced in the negative declaration, and the record, viewed in its entirety, contains sufficient data to support DEC's determination that the proposed project would not have a significant effect upon the environment. Petitioner's remaining arguments on this point are rejected as lacking in merit.

Mikoll, J. P., Yesawich Jr., White and Mahoney, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as annulled respondent Department of Environmental Conservation's issuance of a negative declaration and remitted the matter for further proceedings; determination confirmed and so much of the petition as sought CPLR article 78 relief dismissed; and, as so modified, affirmed. *[See, Matter of Balsam Lake Anglers Club v Department of Envtl. Conservation,* 153 Misc 2d 606.]