Protect the Adirondacks! Inc. v New York State Dept. of Envtl. Conservation (2019 NY Slip Op 05363)





Protect the Adirondacks! Inc. v New York State Dept. of Envtl. Conservation


2019 NY Slip Op 05363


Decided on July 3, 2019


Appellate Division, Third Department


Mulvey, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

527256

[*1]PROTECT THE ADIRONDACKS! INC., Appellant,
v
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

Calendar Date: April 29, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Caffry & Flower, Glens Falls (John W. Caffry of counsel) and Braymer Law, PLLC (Claudia K. Braymer of counsel), for appellant.
Letitia James, Attorney General, Albany (Loretta Simon of counsel), for respondents.



OPINION AND ORDER
Mulvey, J.
Appeal from a judgment of the Supreme Court (Connolly, J.), entered December 4, 2017 in Albany County, upon a decision of the court in favor of defendants.
Defendant Adirondack Park Agency is responsible for the development and implementation of long-range planning on both public and private lands in the Adirondack Park (see generally Executive Law § 801). Defendant Department of Environmental Conservation (hereinafter DEC) has custody and control over the Forest Preserve and designs, constructs and maintains all trails in the Forest Preserve pursuant to its statutory authority to "[p]rovide for the care, custody, and control of the [F]orest [P]reserve" (ECL 3-0301 [1] [d]; see ECL 9-0105 [1])[FN1]. Defendants work collaboratively under a memorandum of understanding on aspects of land use in the Adirondack Park, including the trails at issue (see generally Executive Law § 816).
After years of planning by defendants, DEC began construction of more than 27 miles of Class II Community Connector trails (hereinafter Class II trails), primarily for use as snowmobile trails, in the Forest Preserve within the Adirondack Park. This resulted in the removal or planned removal of more than 6,100 trees that measure at least three inches in [*2]diameter at breast height (hereinafter DBH)[FN2] and approximately 25,000 trees in total from the Forest Preserve. In April 2013, plaintiff commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking, as relevant here, a declaration that construction of the new Class II trails violated NY Constitution, article XIV, § 1 [FN3]. In October 2014, Supreme Court (Ceresia Jr., J.) limited the scope of this action to Class II trails constructed or under construction beginning January 1, 2012 through October 15, 2014. Supreme Court (Connolly, J.) subsequently denied the parties' motions for summary judgment. Following a nonjury trial, the court dismissed plaintiff's first cause of action and declared that the "construction in the Forest Preserve of the Class II trails that were planned and approved as of October 15, [2014 [FN4] did] not violate [NY Constitution, article XIV, § 1]." Plaintiff appeals.
In reviewing a judgment rendered after a nonjury trial, this Court may independently review the evidence and, " while according appropriate deference to the trial [court's] credibility assessments and factual findings, grant the judgment warranted by the record" (Weinberger v New York State Olympic Regional Dev. Auth., 133 AD3d 1006, 1007 [2015] [internal quotation marks and citation omitted]; see Schultz v Sayada, 163 AD3d 1218, 1219 [2018]). Although courts "defer to the Legislature in matters of policymaking, . . . it is the province of the Judicial branch to define, and safeguard, rights provided by the [NY] Constitution" (Campaign for Fiscal Equity v State of New York, 100 NY2d 893, 925 [2003]). NY Constitution, article XIV, § 1 states, in relevant part, that "[t]he lands of the state, now owned or hereafter acquired, constituting the [F]orest [P]reserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed." We are not called upon to decide whether defendants' construction of the Class II trails constitutes a reasonable action or beneficial use of the Forest Preserve for the public good. Pursuant to plaintiff's arguments — which are based on two separate clauses of the constitutional section at issue — we are called upon to determine only whether such construction violates NY Constitution, article XIV, § 1 in either of two ways: (1) the land is not being kept forever wild, or (2) timber in the Forest Preserve is being destroyed.
Regarding the first contention, we agree with Supreme Court's conclusion that construction of the Class II trails did not violate the "forever wild" clause. DEC recommended creating a system of community connector snowmobile trails in the Adirondack Park, with a goal of minimizing environmental impacts by shifting existing snowmobile trails to the periphery of the Forest Preserve and away from interior and "sensitive" areas, and "re-designating existing snowmobile trails in the interior for non-motorized use" or abandonment. Defendants determined that the new trails would generally be nine feet wide, although they would be 12 feet wide on some curves and slopes. Defendants' guidance documents provided for the removal of trees, brush, rocks, stumps, ledges and other natural features, the grading and leveling of the trails, and the cutting of side slopes by means of "bench cuts," as part of the construction of Class II trails.
Plaintiff asserts that the construction violated the "forever wild" clause because the trails are akin to roads, old-growth forest was disturbed, and the construction could affect erosion, permitted the introduction of invasive species and opened the forest canopy causing [*3]sunlight to reach the forest floor. The parties' witnesses presented divergent testimony regarding the effects of the construction, and we defer to Supreme Court's credibility and factual findings. Although the width of Class II trails falls between the width of foot trails (which vary from two to eight feet wide) and forest roads (which are typically between 12 and 20 feet wide), the trails are not paved or covered in gravel and are not crowned to divert water. Thus, record evidence supports the determination that the trails are more similar to hiking trails than to roads. Some of plaintiff's experts testified that the construction opened the forest canopy, which allows greater evaporation from the forest floor, increases the presence of invasive species, alters the forest ecosystem along the trails and fragments the forest. One of those experts admitted on cross-examination that he had previously testified that these same trails generally retained a closed canopy; defendants' experts agreed with that opinion. Defendants' expert witnesses testified that the bench cuts and other techniques prevented erosion and shed water, thereby keeping users on the trail and off sensitive surrounding areas. Evidence indicated that the construction did not disturb old-growth forest to any meaningful degree, and the plant species identified by plaintiff either were not deemed invasive or predated the construction. Defendants' proof also indicated that the shifting of snowmobile trails to the periphery of the Forest Preserve had decreased forest fragmentation. Overall, plaintiff failed to demonstrate how the construction of Class II trails, which have similar aspects to foot trails and ski trails and have less impact than roads or parking lots, impairs the wild forest qualities of the Forest Preserve.
Regarding plaintiff's second contention, we disagree with Supreme Court and conclude that the construction constitutes an unconstitutional destruction of timber. While addressing the same constitutional section at issue here, the Court of Appeals noted that "[t]he words of the Constitution, like those of any other law, must receive a reasonable interpretation, considering the purpose and the object in view" (Association for Protection of Adirondacks v MacDonald, 253 NY 234, 238 [1930]). "The primary object of the [Adirondack P]ark, which was created as a forest preserve, was to save the trees for the threefold purpose of promoting the health and pleasure of the people, protecting the water supply as an aid to commerce and preserving timber for use in the future" (People v Adirondack Ry. Co., 160 NY 225, 248 [1899], affd 176 US 335 [1900]). Demonstrating the intention of the Constitutional Convention of 1894 — which adopted the section at issue — that the section be strictly interpreted, a delegate stated the concern that "'[t]he moment you put in any provision that anybody can cut timber [in the Forest Preserve], then you destroy the effect of the whole amendment'" (Association for Protection of Adirondacks v Macdonald, 228 App Div 73, 78-79 [1930], affd 253 NY 234 [1930], quoting 4 Revised Record 1894 Const Convention at 152; accord Helms v Reid, 90 Misc 2d 583, 592 [Sup Ct, Hamilton County 1977]). The convention further rejected a series of amendments that were seen as weakening this protection — even including amendments to allow the state to sell timber to state residents for campfires within the park or to allow potential thinning of the Forest Preserve based on scientific advice — finding such allowances "exceedingly dangerous" and fearing that they would "open[] the door to a great danger" (Association for Protection of Adirondacks v Macdonald, 228 App Div at 78-79 [internal quotation marks and citation omitted]).
There is a dearth of appellate court precedent concerning NY Constitution, article XIV, § 1. In Association for Protection of Adirondacks v MacDonald (253 NY 234 [1930], supra), the Court of Appeals addressed the state's intention to construct a bobsled run for the 1932 Olympic winter games (id. at 236). The construction necessitated the removal of trees from 4½ acres of land, for a "total number of trees, large and small, estimated at 2,500" (id.). The Court noted that a reasonable interpretation of the constitutional provision required consideration of its object and purpose, which was to prevent "any cutting or any removal of the trees and timber to a substantial extent" so that the Forest Preserve was "preserved, not destroyed"; "[t]herefore, all things necessary were permitted, such as measures to prevent forest fires, the repairs to roads and proper inspection, or the erection and maintenance of proper facilities for the use by the public which did not call for the removal of the timber to any material degree" (id. at 238). Based on the foregoing considerations, the Court of Appeals held that, for a project in the Forest Preserve to be constitutionally permissible, it must comply with the two goals of the section — "to stop the willful destruction of trees upon the forest lands, and to preserve these in the wild state now existing" (id. at 242). Ultimately, the Court rejected the state's proposal for a bobsled run, stating [*4]that "this plea in behalf of sport is a plea for an open door through which abuses as well as benefits may pass. The Constitution intends to take no more chances with abuses, and, therefore, says the door must be kept shut" (id.).
In Matter of Balsam Lake Anglers Club v Department of Envtl. Conservation (199 AD2d 852, 852 [1993]), this Court considered a challenge to "the construction of five new parking lots, the designation of two existing campsites as lawful campsites, the relocation of existing trails and the construction of a new hiking trail, and the construction of a cross-country ski trail loop." "The relocated trail [was] in excess of two miles long and [was] approximately six feet wide" (Matter of Balsam Lake Anglers Club v Department of Envtl. Conservation, 153 Misc 2d 606, 609 [Sup Ct, Ulster County 1991], mod 199 AD2d 852 [1993]). The relocation required the cutting of approximately 350 trees, as well as "312 saplings," with "[t]he amount of cutting needed for the proposed new trail and parking lots" undetermined (Matter of Balsam Lake Anglers Club v Department of Envtl. Conservation, 199 AD2d at 853-854). Despite the final numbers being unclear, this Court, applying the "substantial extent" and "material degree" test to the timber removal, was "unpersuaded that the [plan constituted] improper uses of the [F]orest [P]reserve and/or involve[d] unconstitutional amounts of cutting" (id. at 853).[FN5]
Prior to trial here, the parties stipulated that the length of the 11 trails at issue was 27 miles and the construction would result in the cutting of 6,184 trees that measured at least three inches DBH. We agree with Supreme Court's determination, based on the expert historian's testimony as well as other evidence, that the use of the word "timber" in the constitutional provision at issue is not limited to marketable logs or wood products, but refers to all trees, regardless of size. Although tree size and maturity may be considered in determining whether a proposed project's tree cutting is substantial or material, plaintiff presented expert testimony debunking the assumption that smaller trees are necessarily young or immature; some forest trees measuring less than three inches DBH can be more than 100 years old, and smaller mature trees play an important role in the continuing ecology of the forest. The court generally accepted the tree counts proffered by plaintiff, including for trees less than three inches DBH [FN6]. Accepting those factual findings, approximately 25,000 trees either had been or would be cut to construct the trails.
Although this project did not involve clear-cutting or the removal of a large swath of trees (compare Association for Protection of Adirondacks v MacDonald, 253 NY at 236), but instead necessitated destruction of narrow corridors of trees for many miles, we need to consider the entire project when determining its effects. The destruction of a substantial number of trees can be problematic whether those trees were together or spread out along one or more portions of the Forest Preserve. For example, the construction of these trails required the destruction, on average per mile, of over 200 trees at least three inches DBH and approximately 925 trees of all sizes. It would be anomalous to conclude that destroying 925 trees per mile of trails, or approximately 25,000 trees in total, does not constitute the destruction of timber "to a substantial extent" or "to any material degree" (id. at 238; see 1954 Ops Atty Gen 157 [concluding that the constitutional provision prohibits relocating a portion of existing highway in the Forest Preserve that would involve the cutting of approximately 5,000 trees]). Thus, the construction of the Class II trails resulted in, or would result in, an unconstitutional destruction of timber in the Forest Preserve.
Egan Jr., J.P., Clark and Pritzker, JJ., concur.




Lynch, J. (dissenting).


I respectfully dissent. To begin, I agree with the majority that construction of the Class II Community Connector trails (hereinafter Class II trails) does not violate the "forever wild" clause of NY Constitution, article XIV, § 1. I do not agree, however, that the construction of these trails constitutes an unconstitutional destruction of timber. Considered in context, I agree with Supreme Court's assessment that the removal of approximately 25,000 trees — including 6,100 trees having at least a three-inch diameter — over a system of trails covering 27 miles is neither substantial nor material in the context of NY Constitution, article XIV, § 1 (see Matter of Balsam Lake Anglers Club v Department of Envtl. Conservation, 199 AD2d 852, 854-855 [1993]; Helms v Reid, 90 Misc 2d 583, 594 [Sup Ct, Hamilton County 1977]; see generally Association for Protection of Adirondacks v McDonald, 253 NY 234, 242 [1930]). With respect to the large number of seedlings and other small trees, an ecologist who testified on defendants' behalf explained that the survival rate of such trees is low in view of the closed forest canopy. A forester also confirmed that the Department of Environmental Conservation inventories the trees prior to undertaking a work plan and avoids cutting large trees. Each of these factors lessens the impact of the tree removal. Implementation of the Class II trails is also "reasonable" in the context of NY Constitution, article XIV, § 1 for "[w]hatever the advantages may be of having wild forest lands preserved in their natural state, the advantages are for every one within the [s]tate and for the use of the people of the [s]tate" (Association for Protection of Adirondacks v McDonald, 253 NY at 238-239). Although these trails are designed for snowmobile use during the winter season, the State Land Master Plan points out that the trails are "of essentially the same character as a foot trail" and "may double as a foot trail at other times of the year." These trails effect a reasoned balance between protecting the Forest Preserve and allowing year-round public access. As such, it is my view that Supreme Court properly determined that plaintiff failed to establish a constitutional violation, and, therefore, its judgment should be affirmed.
ORDERED that the judgment is reversed, on the law, with costs, and it is declared that construction in the Forest Preserve of the Class II Community Connector trails that were planned and approved as of October 15, 2014 violates NY Constitution, article XIV, § 1.



Footnotes

Footnote 1: The terms "Adirondack Park" and "Forest Preserve" are not synonymous. The Adirondack Park encompasses approximately six million acres of public and private land in various northern counties within certain boundaries designated by law (see ECL
9-0101 [1]). The Forest Preserve encompasses more than 2.5 million acres of state-owned land within the Adirondack and Catskill Parks (see ECL 9-0101 [6]).
Footnote 2: "Breast height" is 4½ feet above the ground and DBH is the standard measure used by DEC for projects involving the cutting, removal or destruction of trees.
Footnote 3: Plaintiff's second and third causes of action — the causes of action brought pursuant to CPLR article 78 — were dismissed by Supreme Court (Ceresia Jr., J.) prior to trial, leaving only the declaratory judgment cause of action. The dismissal of those two causes of action is not at issue on appeal.

Footnote 4: Although Supreme Court's declaration used the date of October 15, 2015, we presume that the year listed was incorrect because the documents referred to in the decision as the basis for that date indicate that the correct year was 2014. Additionally, the parties' stipulation noted that the time period covered by this action ended on October 15, 2014.

Footnote 5: Because it appears that the record did not include data regarding the amount of cutting required for certain aspects of the proposed project, the Court was required to render a decision based only on the data provided.

Footnote 6: DEC's tree-cutting policy does not require it to count trees less than three inches DBH, so defendants did not provide tree counts for such trees.